Argued and submitted November 30, 1994, reversed and remanded in part on appeal
and cross-appeal; otherwise affirmed July 26, 1995

Sergio MAURI,
Administrator of the Estate of
Noraida Mauri, Deceased,
*Appellant,*

Sergio MAURI,
*Plaintiff,*

*and*

Sergio MAURI, Jr.,
*Plaintiff,*

*v.*

Michael Steven SMITH,
Capitol Investigation Company, Ltd.,
Eric D. Reiter, John C. Eckhart,
William Walker, Nadine L. Bunch,
Ernie F. Carneau, William M. Pace,
Terry Lorz and the City of Portland,
*Respondents.*

Noraida MAURI,
*Plaintiff,*

Sergio MAURI,
*Respondent - Cross-Appellant,*

*and*

Sergio MAURI, Jr.,
*Plaintiff,*

*v.*

Michael Steven SMITH,
Capitol Investigation Company, Ltd.,
Eric D. Reiter, John C. Eckhart,
William Walker, Nadine L. Bunch,
Ernie F. Carneau, William M. Pace,
Terry Lorz and the City of Portland,
*Appellants - Cross-Respondents.*

(90-0704234; CA A77516)

901 P2d 247

Robert J. Miller, Sr., argued the cause for Sergio Mauri, Administrator of the Estate of Noraida Mauri, Deceased, and respondent - cross-appellant Sergio Mauri. With him on the briefs were Brien F. Hildebrand and Moomaw, Miller & Reel.

Stephen P. McCarthy argued the cause for respondents and appellants - cross-respondents Michael Steven Smith and Capitol Investigation Company, Ltd. On the brief of respondents - cross-appellants Smith and Capitol Investigation Company, Ltd., were John Folawn, Martin W. Jaqua and, Holmes, Folawn & Rickles. On the respondent's brief of Smith and Capitol Investigation Company, Ltd., and reply

brief of cross-appellants Smith and Capitol Investigation Company, Ltd., were John Folawn, Stephen P. McCarthy and Lane Powell Spears Lubersky.

Harry M. Auerbach, Deputy City Attorney, argued the cause and filed the briefs for respondents and appellants - cross-respondents Eric D. Reiter, John C. Eckhart, William Walker, Nadine L. Bunch, Ernie F. Carneau, William M. Pace, Terry Lorz and the City of Portland.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

This case encompasses three appeals and a cross-appeal from a judgment that adjudicated plaintiffs'[1] claims for invasion of privacy, intentional infliction of emotional distress, assault, battery, civil rights violations, and an amended appeal from a supplemental judgment for statutory attorney's fees. Those claims all arose from defendant Michael Smith's failed attempt to serve a complaint and summons on Sergio Mauri, Jr., (Junior) and from defendant police officers' ensuing actions. We affirm in part and reverse in part on the appeal of Sergio Mauri, Administrator of the Estate of Noraida Mauri, Deceased, and on the cross-appeal of Sergio Mauri, Sr. (Senior). We affirm on the appeal of defendants Smith and Capital Investigation Company, Ltd. (Capitol). We affirm on the appeal of defendant police officers Reiter and Eckhart and the City of Portland. We reverse on the appeal of defendant police officers Walker, Bunch, Carneau, Pace, and Lorz. Finally, we reverse on Portland's and the officers' appeal from the supplemental judgment awarding costs and attorney's fees.

The facts material to our review are as follows.[2] Senior, his wife, Noraida, and his son, Junior, lived together at the Celilo Court apartment complex in Portland, where Senior was resident manager. In the early evening of July 17, 1988, Smith, an employee of defendant Capitol, went to plaintiffs' apartment to serve a summons and complaint on Junior. Junior was asleep on a couch on the first floor of the apartment, and Senior and Noraida were watching television in their upstairs bedroom. When Smith knocked on the door, Noraida called from the upstairs window, "May I help you?"

---

[1] After she filed her appeal, but before oral argument, plaintiff Noraida Mauri died. Her estate has been substituted as an appellant.

[2] As amplified below, this recitation is material to our review of (1) plaintiffs' contentions that the court erroneously allowed a directed verdict against their invasion of privacy claims; and (2) all defendants' contentions that the court erroneously denied their motions for directed verdicts against plaintiffs' claims for intentional infliction of emotional distress. Because of that juxtaposition, we consider the evidence adduced at trial and related reasonable inferences in the light most favorable to plaintiffs. *See Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 695, 874 P2d 82 (1994) (grant of directed verdict); *Sivers v. R & F Capitol Corp.*, 123 Or App 35, 37, 858 P2d 895 (1993), *rev den* 318 Or 351 (1994) (denial of directed verdict). Although the parties assign error to other rulings, our disposition of those assignments does not turn on the sufficiency of the evidence.

Smith responded that he was looking for Junior, and Noraida told him that Junior was sleeping on the couch downstairs. Smith then began pounding loudly on the door, yelling, "Black niggers open that door." When Senior went downstairs to investigate and asked Smith to identify himself, Smith said he was a police officer and tried to enter the apartment. Senior blocked his passage and a shoving match ensued. As Smith was leaving, he stated that he was going to call his supervisors who would "come and kick [Senior's] ass."

Smith then went next door and asked the neighbors if he could use their telephone. When they refused, Smith used the public telephone located in front of the complex to call his employer. Meanwhile, the neighbors called 911 to report the altercation between Smith and Senior.

Shortly thereafter, defendants Portland Police Officers Eckhart, Reiter, and Bunch arrived at the apartment complex in response to the 911 call. Officer Reiter had had prior contact with Junior when Junior had threatened to kill a female fellow officer in his presence several months earlier. Reiter took the summons and complaint from Smith, and he and Eckhart approached the Mauri apartment, with Smith following. Bunch remained outside.

When they reached the Mauri apartment, Senior did not object to Reiter and Eckhart entering, but told them not to allow Smith to enter. The officers disregarded Senior's request and permitted Smith to accompany them into the apartment. Smith identified Junior, who was still lying on the couch. In Senior's and Noraida's presence, Reiter threw the summons and complaint in Junior's face and said, "Now you have been served, motherfucker." Smith then told Junior, "You are a nigger, you motherfucker. Get up. I want to fight with you." Turning his attention to Senior, Smith exclaimed that Senior's mother was a "bitch" and that Senior was a "bigger bitch." At that point, Junior jumped up, shoved Reiter out of the way, and chased Smith from the apartment. Reiter pursued on foot, catching Junior momentarily, but Junior struck him and pulled free. After chasing Smith for some distance, Junior jumped a fence and reentered the Mauri apartment through a back door.

Eckhart and Reiter followed Junior into the kitchen with the intent of arresting him. Junior, who was extremely agitated, positioned himself in the corner of the kitchen and refused to allow the officers to arrest him. Noraida and Senior placed themselves between the officers and Junior. Reiter, realizing that the situation was nearly out of control, called for backup. After officers Pace, Walker, Carneau, and Lorz arrived, the officers decided to arrest Junior. One or more of the officers cleared Senior and Noraida out of the way by hitting them with nightsticks. The officers arrested Junior for assaulting an officer and Senior for interfering with a police officer.

Senior, Noraida, and Junior[3] brought this action against Smith, Capitol, the officers, and Portland. With respect to Smith and Capitol, the Mauris asserted claims for intentional infliction of emotional distress, invasion of privacy, and assault. With respect to the officers and Portland, the Mauris asserted claims for civil rights violations under 42 USC § 1983, intentional infliction of emotional distress, invasion of privacy, and assault and battery.

Those claims were tried to a jury. At the close of evidence, the trial court: (1) directed verdicts for all defendants on plaintiffs' invasion of privacy claims; (2) directed verdicts for Smith and Capitol on the assault claims; and (3) denied defendants' motions for directed verdicts against plaintiffs' claims for intentional infliction of severe emotional distress. Finally, the court denied plaintiffs' motion, under ORCP 23 B, to amend their pleadings to include trespass claims against all defendants so as to conform to the evidence.

The jury returned special verdicts on the remaining claims. With respect to Noraida, the jury found for defendants on all claims, including her claims for intentional infliction of emotional distress against all defendants and her claims for assault and battery and civil rights violations against the officers and Portland. With respect to Senior, the jury found that all defendants were liable for intentional infliction of emotional distress and that one or more of the officers was liable for assault and battery. However, the jury further found that the officers did not deprive Senior "of his

---

[3] Junior voluntarily dismissed his claims with prejudice before trial.

right to be free from the excessive use of force during arrest.'' The jury awarded Senior compensatory damages against Portland and the officers of $500 for assault or battery and $40,000 for intentional infliction of emotional distress and awarded an additional $10,000 against Smith and Capitol for intentional infliction of emotional distress.

After the trial court entered judgments on those verdicts, Noraida appealed, assigning error to: (1) the trial court's denial of her ORCP 23 B motion to amend to add a trespass claim; and (2) the court's allowance of defendants' motions for directed verdicts against her invasion of privacy claim. All defendants appealed the judgment for Senior, assigning error to the trial court's denial of their motions for directed verdicts against his claims for intentional infliction of emotional distress and to the ensuing judgment. Senior cross-appealed against all defendants on the same grounds asserted in Noraida's appeal. Finally, more than a year after entering its original judgment, the trial court entered a supplemental judgment for Senior against the officers and Portland, awarding attorney's fees and costs pursuant to 42 USC § 1988. Those defendants filed an amended notice of appeal from that supplemental judgment asserting that the jury's special verdict did not find a violation of 42 USC § 1983, which is the predicate for such costs and fees.

For ease of analysis, we will address, successively: (1) Noraida's estate's appeal and Senior's identical cross-appeal; (2) the appeal of defendants Smith and Capitol; (3) the appeal of defendants Portland and the officers; and (4) those defendants' appeal from the supplemental judgment.

■ Plaintiffs assert that the court erred in directing verdicts for defendants on the invasion of privacy claims. The trial court granted defendants' motions on the ground that an intrusion into a residence, without more, is not sufficient to sustain an action for invasion of privacy:

"It just — I don't think a trespass to a residence constitutes an invasion of privacy as such, and that's what this is. I'm just not willing to create a new tort."

Plaintiffs dispute that reasoning and argue that, under Oregon decisions applying *Restatement (Second) Torts*

§ 652B (1977), defendants' entry into their apartment presented a jury issue as to whether defendants' conduct constituted an invasion of privacy. *Restatement (Second) Torts* § 652B reads:

> "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

*See, e.g., McLain v. Boise Cascade Corp.*, 271 Or 549, 554, 533 P2d 343 (1975); *Magenis v. Fisher Broadcasting, Inc.*, 103 Or App 555, 561, 798 P2d 1106 (1990) (both applying *Restatement (Second) Torts* § 652B formulation).

■ Thus, plaintiffs must show: (1) an intentional intrusion, physical or otherwise; (2) upon plaintiffs' private affairs or concerns; (3) that would be highly offensive to a reasonable person. *See Leggett v. First Interstate Bank of Oregon*, 86 Or App 523, 527, 739 P2d 1083 (1987). Applying that test, and viewing the evidence in the light most favorable to plaintiffs, *Griffin v. K. E. McKay's Market of Coos Bay, Inc.*, 125 Or App 448, 451, 865 P2d 1320 (1993), *rev den* 319 Or 80 (1994), we conclude that the trial court correctly directed a verdict in favor of the officers and Portland but erred in doing so for Smith and Capitol.

■■ We affirm the directed verdict for Portland and the officers because plaintiffs, who based their claim on the conduct of Reiter and Eckhart, adduced no proof that those officers intentionally intruded into plaintiffs' apartment. "Intrusion" necessarily connotes an *unconsented* entry. Here, there was no evidence of lack of consent, including any objection by the Mauris, or any use of force or coercion by Reiter and Eckhart. Nor did the Mauris testify that they did not object to the officers' entry because of any fear or intimidation. Conversely, the record discloses that Senior was perfectly capable of objecting to, and barring, entry when he so chose. It is uncontroverted that, although Senior did not object to Reiter's and Eckhart's entry, he did expressly object to Smith's entry. We thus conclude that plaintiffs' proof as to the officers' conduct was insufficient as a matter of law.[4]

---

[4] In so holding, we do not, of course, suggest that an express objection to entry is

■	By contrast, we conclude, without further discussion, that there was proof from which the jury could have found that Smith intentionally intruded into the apartment and that the apartment was a private area. Consequently, we focus on the third element of invasion of privacy — *i.e.*, could reasonable jurors have found that Smith's intrusion into the apartment was highly offensive?

Smith and Capitol argue that the court properly granted the directed verdict because, under *McLain v. Boise Cascade Corp.*, a trespass is not, by itself, so offensive as to constitute an invasion of privacy. Defendants read too much into that case.

In *McLain*, the court held that the trial court properly granted a directed verdict against an invasion of privacy claim because no reasonable person could find that defendant's trespass on the periphery of plaintiff's property while engaging in unobtrusive surveillance activities was highly offensive behavior. 271 Or at 556. Here, Smith's trespass into an occupied apartment, over the residents' objections, is qualitatively different from an undetected technical trespass to real property. Moreover, the court in *McLain*, itself, suggested that an intrusive trespass may constitute an invasion of privacy: "Trespass to peer in windows and to annoy or harass the occupant may be unreasonable." 271 Or at 556. Thus, *McLain* is not controlling.

The only other Oregon case pertinent to whether a residential trespass may constitute an invasion of privacy is *Magenis v. Fisher Broadcasting, Inc.*. However, *Magenis* stands for the obverse of plaintiffs' position, *i.e.*, a residential trespass is not *per se* an invasion of privacy. There, the plaintiffs moved for a directed verdict on their invasion of privacy claims, which were based on proof that the defendant television reporter had accompanied police officers in filming a raid on their home. We affirmed the trial court's denial of that motion, stating, "[i]n determining whether the defendant's conduct was tortious, the fact that it constituted an unlawful trespass is only one factor to be considered." 103 Or App at 562. Thus, neither *Magenis* nor *McLain* is particularly

---

always a prerequisite for an intrusion. For example, a residential burglary could well be an intentional intrusion.

useful, and there appear to be no other pertinent Oregon decisions.

We note, however, that commentary to *Restatement (Second) Torts* § 652B does speak to whether a nonincidental residential trespass can, without more, trigger liability for invasion of privacy. *Comment b* states:

"The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home."

Decisions from other jurisdictions accord with that principle, holding that evidence of a trespass into a plaintiff's home or hotel room is sufficient to support liability for invasion of privacy. For example, in *Gonzales v. Southwestern Bell Tel. Co.*, 555 SW2d 219 (Tex App 1977), the plaintiffs refused to pay the defendant a fee for two telephones located in their home. Consequently, the defendant informed them that it was terminating their service and dispatched an employee to remove the phones from the plaintiffs' home. The employee, who found no one home, entered nonetheless, and removed the phones from a hallway and a bedroom. The jury returned a verdict for the plaintiffs on their invasion of privacy claim, but the trial court granted the defendant's motion for judgment n.o.v. The Texas Court of Appeals reversed, holding that the jury was entitled to find that the employee, acting as the telephone company's agent, had invaded the plaintiffs' privacy by entering their home without their permission.

Similarly, in *Sowards v. Norbar, Inc.*, 78 Ohio App 3d 545, 605 NE2d 468 (1992), the defendant searched the plaintiff's motel room without his consent. The jury found that the defendant invaded the plaintiff's privacy, and the trial court denied the defendant's motion for judgment n.o.v. The Ohio Court of Appeals affirmed:

"[T]he fact that [plaintiff's] personal property may not have been disturbed during the search does not preclude [plaintiff] from asserting an invasion of his legitimate right of privacy in the room itself." 78 Ohio App 3d at 555, 605 NE2d at 475.

■ Given Oregon courts' prior endorsement of *Restatement (Second)* § 652B, *see, e.g., McLain*, we find the principle expressed in *comment b* to that section and in analogous decisions from other jurisdictions to be persuasive. Accordingly, we conclude that plaintiffs' proof that Smith entered their home over their objections was sufficient to withstand Smith's and Capitol's motions for directed verdicts on the invasion of privacy claims. The trial court erred in granting those motions.[5]

■■ Plaintiffs also assign error to the court's denial of their motions to amend their complaints pursuant to ORCP 23 B to include claims for trespass against all defendants. We review for an abuse of the trial court's discretion. *Adams v. Knoth*, 102 Or App 238, 246, 794 P2d 796, *rev den* 310 Or 422 (1990).

On the first day of trial, plaintiffs moved to amend their complaints to allege trespass. Defendants objected, and the court denied that motion, on the ground that defendants would be prejudiced by the last minute interjection of a new claim. Plaintiffs do not assign error to that ruling. Thereafter, in trying their invasion of privacy claims, plaintiffs presented evidence of defendants' intrusion into the apartment. Defendants did not object to that evidence. At the close of all evidence, plaintiffs moved pursuant to ORCP 23 B to add trespass claims based on the evidence of defendants' entry.

ORCP 23 B provides, in part:

"When issues not raised by the pleadings are tried by *express or implied consent* of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." (Emphasis supplied.)

Defendants responded that they had not expressly or impliedly consented to the interjection of trespass claims, and the trial court denied plaintiffs' motions.

---

[5] We note, moreover, that plaintiffs adduced proof that, after entering the apartment, Smith subjected them to racial slurs and epithets. Thus, even if plaintiffs had been obliged to show that Smith engaged in highly offensive conduct beyond the residential trespass over their objections, they did so.

We agree with defendants that the trial court's ruling was well within the bounds of discretion. The procedural history here demonstrates that defendants did not consent to the interjection of trespass claims. Having objected to and prevented such an amendment at the beginning of trial, it makes no sense that they would have acquiesced in the same amendment immediately thereafter. Instead, defendants consented to the introduction of the alleged "trespass" evidence solely for the purposes of plaintiffs' invasion of privacy claims. *See Navas v. City of Springfield*, 122 Or App 196, 201, 857 P2d 867 (1993). Thus, the trial court correctly concluded that the prerequisites to amendment under ORCP 23 B were not satisfied.

■ We turn next to Smith's and Capitol's appeal from the judgment for Senior on his claim for intentional infliction of emotional distress. Those defendants assign error to the court's denial of their motion for a directed verdict. Accordingly, we review to determine whether there is any evidence from which the jury could have imposed liability based on Smith's conduct. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984).[6]

■ To establish intentional infliction of severe emotional distress, a plaintiff must prove that: (1) the defendant intended to inflict severe mental or emotional distress; (2) the defendant's act in fact caused plaintiff severe mental or emotional distress; and (3) the defendant's actions consisted "of 'some extraordinary transgression of the bounds of socially tolerable conduct' " or exceeded " 'any reasonable limit of social toleration.' " *Patton v. J. C. Penney Co.*, 301 Or 117, 122, 719 P2d 854 (1986) (quoting *Hall v. The May Dept. Stores*, 292 Or 131, 135, 137, 637 P2d 126 (1981)).

■ Smith argues that there was no evidence that his conduct exceeded any reasonable limit of social toleration.[7] In determining whether conduct is socially intolerable, we

---

[6] Plaintiffs' claims against Capitol were based solely on *respondeat superior*. Capitol has never contended that Smith acted beyond the course and scope of his employment.

[7] Smith also argues that there was no evidence that he intended to inflict severe emotional distress on Senior or that he actually caused Senior to suffer severe emotional distress. We conclude, without further discussion, that there was evidence to support the jury's finding on both elements.

review the alleged conduct on a case-by-case basis, considering the totality of the circumstances. *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994).

We conclude that there was ample evidence from which the jury could find that Smith's conduct towards Senior exceeded any reasonable limits of social toleration. Senior presented the following evidence: (1) after knocking on the Mauris' door, Smith yelled, "Black niggers open that door!"; (2) Smith falsely identified himself as a law enforcement officer and tried to enter the apartment; (3) while Senior was ejecting Smith from the apartment, Smith stated he was going to call his supervisors to "come and kick [Senior's] ass"; (4) immediately thereafter, Smith threw a rock at the Mauris' closed door; (5) after the police arrived, Smith entered the Mauri apartment over Senior's objections; and (6) while inside the apartment, after calling Senior's mother a "bitch," Smith stated that Senior was a "bigger bitch." Smith's conduct — the combination of unconsented entry, racist comments, and threatening and violent conduct directed against Senior in his own home — amply supported the jury's verdict against Smith and Capitol:

> "[O]vert acts of racism * * * are not simply rude and boorish, but are more properly characterized as the kind of conduct that a jury could find was intended to inflict deep, stigmatizing and psychic wounds on another person." *Lathrope-Olson*, 128 Or App at 408.

*See also Franklin v. PCC*, 100 Or App 465, 471, 787 P2d 489 (1990). We affirm that aspect of the judgment.

■ We next consider Portland's and the officers' cross-appeal. Those defendants assert that the court erred in denying their motion for a directed verdict on Senior's intentional infliction claim and in entering judgment on the jury's verdict. In particular, they argue that the evidence pertaining to the officers' conduct was legally insufficient in two respects. First, the evidence did not disclose conduct that was so extraordinary as to exceed the bounds of social toleration. Second, they assert, Senior failed to prove that the officers intended to inflict emotional distress on him. We reject both arguments.

As delimited by its special interrogatory responses, the jury's verdict against Portland and the officers on the intentional infliction claim was based on the officers' conduct *before* Junior chased Smith from the apartment. Thus, in reviewing the sufficiency of Senior's proof, we consider the totality of the circumstances up until that time.

Viewed most favorably to Senior, that evidence shows that: (1) two uniformed officers, Reiter and Eckhart, entered the Mauris' home without an express invitation or a warrant, but without any objection by the Mauris; (2) in entering the apartment, the officers were well aware of the earlier altercation between Senior and Smith; (3) nonetheless, and over Senior's express objections, the officers permitted Smith to enter the apartment; (4) Reiter, while standing in the Mauris' living room, and in Senior's presence, threw the summons and complaint in Junior's face, saying, "Now you have been served, motherfucker"; (5) the officers stood by and did nothing while Smith vilified the Mauris, including Senior, his son, and his mother, in their own home.

We conclude that the evidence was sufficient to show conduct "which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior." *Hall*, 292 Or at 137. In so holding, we are mindful of the rigor of that standard and of our obligation to apply it on a case-by-case basis. At the same time, we are mindful that the jurors, who were properly instructed on the standard of liability and who, no less than we, are familiar with the bounds of tolerable conduct in our society, determined that the officers' conduct was so extraordinary as to warrant tort liability.

In assessing the totality of the circumstances, two contextual factors seem especially significant. First, defendants were uniformed police officers. Second, the events occurred in Senior's home. The combination of those factors, coupled with the actors' particular conduct — both action and inaction — rendered that conduct so exceptional as to exceed social toleration.

We are neither naive about the interactions between police officers and the public nor unsympathetic to the extraordinary demands of day-to-day police work. Still, police

officers exercise special authority and, because of that authority, they are, in some circumstances, subject to special standards of conduct. Thus, conduct that would not be exceptionable for a private citizen may represent an extraordinary transgression by a police officer:

> "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. * * * In particular[,] police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position." *Restatement (Second) Torts* § 46, *comment e.*

The second significant contextual factor or "filter" was the location. The conduct occurred in Senior's living room. Just as our society views police officers as being special, so too do we regard our homes. We speak not infrequently of the sanctity of one's home, as a haven for family. Thus, conduct that is tolerable — or, at least, must be tolerated — on the street, in the market place, or in the work place, may be intolerable at home.

Given those norms, the jury was entitled to conclude that the officers' conduct in the Mauris' home was so egregious as to warrant the imposition of tort liability. Regardless of whether Reiter's conduct and comments alone transgressed the bounds of social toleration, the combination of that behavior and the officers' conduct with respect to Smith certainly did. The officers not only permitted Smith's unlawful entry, notwithstanding Senior's objections and their knowledge of the earlier altercation, but they then stood by and did nothing while Smith verbally abused Senior and his family in their own home. That, in the totality of the circumstances, was enough. *Accord Lathrope-Olson.*

Similarly, we reject Portland's and the officers' argument that Senior's proof was insufficient to show that the officers acted with intent to cause Senior emotional distress. Such proof of intent is almost inevitably circumstantial and inferential; few defendants admit a specific intent to inflict injury. Here, the jury could reasonably infer such an intent. In particular, the jury was entitled to infer a specific intent to inflict emotional distress from the fact that the officers knew

about the earlier altercation between Senior and Smith but, nevertheless, permitted Smith to enter Senior's home unlawfully over his objections. Such conduct could reasonably be viewed as calculated to embarrass and humiliate Senior, who had previously barred Smith's entry. *See Buckel v. Nunn*, 133 Or App 399, 405, 891 P2d 16 (1995); *Bodewig v. K-Mart, Inc.*, 54 Or App 480, 487, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982).

Finally, five of the seven defendant officers — Walker, Carneau, Pace, Lorz, and Bunch — argue that, regardless of the sufficiency of the proof with respect to Reiter and Eckhart, the court improperly entered judgment against them for joint and several liability on Senior's intentional infliction claim. They argue that they could not be liable because the evidence shows that only Reiter and Eckhart were present in the apartment at the relevant time, as prescribed by the special verdict. We agree. Accordingly, we affirm the judgment against Portland, Reiter and Eckhart on Senior's claim for intentional infliction of emotional distress, and we reverse the judgment against Walker, Carneau, Pace, Lorz, and Bunch on that claim.[8]

Finally, we address Portland's and the officers' appeal from the supplemental judgment awarding Senior attorney's fees pursuant to 42 USC § 1988, which provides:

> "In any action or proceeding to enforce a provision of § * * * 1983 * * *, of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The dispute over attorney's fees arises from confusion over whether Senior actually prevailed in his claim for civil rights violations under section 1983. That confusion, in turn, arises from a lack of precision in the special verdict form, which was crafted at the eleventh hour and was then revised, even during the jury's deliberations, in response to the jury's questions and concerns, which pointed out deficiencies and potential inconsistencies in the special interrogatories.[9]

---

[8] Walker, Bunch, Carneau, Pace, and Lorz do not assign error to the entry of judgment against them, jointly and severally, on Senior's separate claim for assault or battery.

[9] This recitation is not intended as a criticism of the able trial judge, or of

The special verdict form did not include an interrogatory that explicitly referred to 42 USC § 1983 or to Senior's "civil rights claims." Instead, the special verdict form posed two arguably pertinent interrogatories. *First*:

"Indicate if any of the [defendant police officers] deprived Sergio Mauri, Sr. of his right to be free from the use of excessive force during arrest."

The jury responded "no" with respect to each officer. *Second*:

"Did any one or more of these defendant Portland police officers, without justification, commit an assault or battery against Sergio Mauri, Sr.?"

The jury responded "yes."

Senior pointed to the latter response as proof that the jury had found that some or all of the officers had engaged in conduct violating his civil rights.[10] Conversely, Portland and the officers invoked the former response. The trial court agreed with Senior and awarded him reasonable attorney fees:

"[A]s I can best understand the spirit of the statutory scheme, Mr. Mauri, Sr. has prevailed on the basis of his claim, although it was not squarely presented to the jury. It is difficult to visualize that the assault that the jury found was committed on Mr. Mauri could have been such an assault that it would not be a violation of his rights under Section 1983."

We reverse. Our holding turns on the manner in which Senior's civil rights claim was framed. After reviewing Senior's pleadings, the jury instructions on the civil rights claims (to which Senior did not except), and the special verdict interrogatory responses, we conclude that the only interrogatory that corresponded to Senior's section 1983 claim, *as that claim was pleaded and presented to the jury*, was the first interrogatory, which the jury answered in the negative. The

counsel, who were managing a complex, multi-party case under a demanding schedule. It is, instead, a description of the procedural context that gave rise to subsequent uncertainty.

[10] Portland did not dispute that, at all material times, the officers had acted under color of state law. Thus, Senior argued, the jury necessarily found that the officers had engaged in an unjustified assault or battery while acting under color of state law.

second interrogatory, which the jury answered affirmatively, pertained solely to Senior's common law assault or battery claim and, thus, could not provide the basis for liability under section 1983. *See National Organization for Women v. Operation Rescue*, 37 F3d 646, 653-54 (DC Cir 1994) (party that loses on a federal civil rights claim, but recovers on a pendant state claim, is not a prevailing party under section 1988 and is not entitled to attorney's fees); *Mateyko v. Felix*, 924 F2d 824, 828 (9th Cir 1990), *cert den* 502 US 814 (1991) (same).

The jury instructions on Senior's civil rights claim limited that claim to the alleged use of excessive force *during* Senior's arrest. That claim, as defined by the instructions, did not encompass unjustified assault or battery occurring at any other time. Thus, to prevail on that claim, as submitted to the jury, Senior was required to prove excessive use of force during the arrest. However, as noted, the jury unequivocally found no excessive use of force during Senior's arrest. Consequently, Senior did not prevail on his claim and could not recover attorney's fees under section 1988.[11]

On appeal and cross-appeal, judgment for Smith and Capitol on claim for invasion of privacy reversed and remanded; on cross-appeal, judgment against defendants Walker, Carneau, Pace, Lorz and Bunch on claim of intentional infliction of emotional distress reversed; supplemental judgment reversed; otherwise affirmed.

---

[11] Because the only physical contact Senior had with the officers was during his arrest, the two interrogatory responses might appear to be internally inconsistent. However, the second response pertained to "assault *or* battery" (emphasis supplied), and the jury instructions correctly stated that actual physical contact is not an element of assault. Consequently, the jury could have found that one or more of the officers committed assault against Senior but did not use excessive force during his arrest.