Argued and submitted May 6; reassigned July 8, decision of the Court of Appeals
and judgments of the circuit court affirmed in part and reversed in part, and case
remanded in part to circuit court December 27, 1996

Sergio MAURI,
Administrator of the Estate of
Noraida Mauri, Deceased,
*Petitioner on Review,*

Sergio MAURI,
*Plaintiff,*

*and*

Sergio MAURI, Jr.,
*Plaintiff,*

*v.*

Michael Steven SMITH,
Capitol Investigation Company, Ltd.;
Eric D. Reiter; John C. Eckhart;
William Walker; Nadine L. Bunch;
Ernie F. Carneau; William M. Pace; Terry Lorz;
and the City of Portland,
*Respondents on Review.*

*Noraida MAURI,*
*Plaintiff,*

Sergio MAURI,
*Petitioner on Review,*

*and*

Sergio MAURI, Jr.,
*Plaintiff,*

*v.*

Michael Steven SMITH,
Capitol Investigation Company, Ltd.;
Eric D. Reiter; John C. Eckhart;
William Walker, Nadine L. Bunch;
Ernie F. Carneau; William M. Pace; Terry Lorz;
and the City of Portland,
*Respondents on Review.*

(CC 90-0704234; CA A77516; SC S42635)

929 P2d 307

Robert J. Miller, of Moomaw, Miller & Hildebrand, Portland, argued the cause for petitioners on review. With him on the petition was Brien Hildebrand.

Harry Auerbach, Deputy City Attorney, Portland, argued the cause and filed the brief for respondents on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GRABER, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

**GRABER, J.**

The issue before us is whether an entry by police officers into the living room of an apartment occupied by the apartment complex's manager and his wife, in the circumstances presented, permits recovery for the tort of invasion of privacy based on a theory of "intrusion upon seclusion." The trial court granted a directed verdict in favor of defendant police officers and their employer, the City of Portland, on that claim. The Court of Appeals affirmed. *Mauri v. Smith*, 135 Or App 662, 669, 901 P2d 247 (1995). We reverse.

This court previously has discussed the standard for granting a directed verdict. "Normally, when a defendant moves for a directed verdict for failure to establish a claim, the motion, in effect, asks for a dismissal of the entire case because the evidence, viewed in the light most favorable to the plaintiff, is insufficient to support a recovery." *Ream v. Keen*, 314 Or 370, 373 n 2, 838 P2d 1073 (1992). "[A] motion for directed verdict against a party's entire case is properly denied if *any* allegation is supported by the evidence." *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 360, 788 P2d 428 (1990) (emphasis in original). On review of a directed verdict, this court reviews for errors of law, *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 118, 914 P2d 682 (1996), and considers the evidence in the light most favorable to the party against whom the verdict was entered, *Paulson v. Western Life Insurance Co.*, 292 Or 38, 40 n 1, 636 P2d 935 (1981). Thus, we view the evidence in this case in the light most favorable to plaintiffs.

Although plaintiffs asserted numerous claims below, only their claim for invasion of privacy comes to us on review.[1] Therefore, we discuss only the facts relevant to that claim.

Sergio Mauri, Sr. (Senior), his wife, Noraida, and their son, Sergio Mauri, Jr. (Junior), lived together at a Portland apartment complex, where Senior was the resident

---

[1] The Court of Appeals' disposition of the remaining claims is reflected in the decisional paragraph at the end of this opinion.

manager. We refer to Senior and his wife as "plaintiffs" in this case.

On the evening of July 17, 1988, defendant Smith, an employee of defendant Capitol Investigation Company, Ltd. (Capitol), went to plaintiffs' apartment to serve a civil summons and complaint on Junior. When Smith knocked on the door, no one opened it. Smith looked through a window and saw Junior asleep on a couch on the first floor of the apartment. Senior and Noraida were watching television in an upstairs bedroom. Smith began to pound on the door loudly, claimed that he was a "court marshal," demanded that Junior open the door, and yelled obscenities and racial slurs. Senior then went downstairs, opened the door, and asked Smith for identification. When Smith refused to produce identification, Senior told him to leave.

Smith left the premises and called his employer from a nearby telephone booth to get further instructions. Meanwhile, a neighbor who had witnessed the confrontation between Smith and Senior called 9-1-1. Senior testified that, after Smith left the apartment, he stood at the door to watch Smith because, if Smith had not called the police, Senior would have.

Two Portland police officers, defendants Reiter and Eckhart, arrived and learned from Smith that he was trying to serve a civil summons and complaint on Junior. According to Senior's testimony, he tried to get the officers to come to him but had to wait while they talked to Smith. The officers took the criminal summons and complaint from Smith. Then, when the officers approached plaintiffs' apartment, Senior was waiting outside. The front door to the apartment was open.

Senior knew that the police officers had been called because of his altercation with Smith. Senior testified that he told the two officers not to allow Smith to enter. The two officers entered the apartment, and Senior accompanied them.

Despite Senior's request to the two police officers to keep Smith out, Smith followed them into plaintiffs' living room, and the officers did not stop him. Inside the apartment, Senior asked the officers to "Take this man [Smith] out of my

property." One of the officers threw the papers at Junior and called him a derogatory name. Smith shouted obscenities at the Mauris and challenged Junior to a fight. Junior chased Smith out of the apartment, bumping into Eckhart in the process. The officers chased Junior, who eventually ran back inside the apartment and into the kitchen. The officers followed him into the apartment. Meanwhile, additional officers had arrived at the scene. After a melee in the kitchen, officers arrested both Junior and Senior.

Noraida was present when the police officers entered the living room. She was present when Senior asked the officers to keep Smith out of the apartment and to take him out, but she had no conversation with the two officers at that time. Neither did she say anything to Senior about the officers' entry into the living room. She testified that her husband was trying to explain things to the officers to get their help in keeping or taking Smith out.

At trial, there was no evidence that either plaintiff expressly invited or authorized defendants Reiter and Eckhart to enter their living room. There also was no evidence that either plaintiff expressly asked the two officers not to enter or otherwise objected to their entry, either verbally or physically.

All three Mauris filed this action against Smith, Capitol, seven police officers, and the City of Portland, asserting a claim for invasion of privacy and several other claims. Junior voluntarily dismissed all his claims with prejudice before trial. The trial court directed verdicts for all defendants on plaintiffs' invasion-of-privacy claim and for defendants Smith and Capitol on plaintiffs' assault claim. The trial court concluded that an intrusion into a residence, without more, is not sufficient to sustain a claim for invasion of privacy on a theory of "intrusion upon seclusion." The remaining claims were tried to a jury, which returned a verdict for Senior on some of his claims.

Plaintiffs appealed. As now relevant, they challenged the trial court's granting of a directed verdict for defendants on the invasion-of-privacy claim. The Court of Appeals affirmed the directed verdict for the police officers and the City of Portland, reasoning that the tort of invasion

of privacy based on a theory of "intrusion upon seclusion" requires a showing of unconsented entry and that plaintiffs had failed to produce evidence of an unconsented entry. *Mauri*, 135 Or App at 669. However, the Court of Appeals reversed the directed verdict for Smith and Capitol. *Id.* at 670-72. Plaintiffs petitioned this court for review of the directed verdict for the police officers and the City of Portland, among other issues, and we allowed limited review to consider that issue.[2]

■■ The tort of invasion of privacy, in general, protects the right of a plaintiff "to be let alone." *Humphers v. First Interstate Bank*, 298 Or 706, 714, 696 P2d 527 (1985) (quoting W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 117, at 851 (5th ed 1984)). Four separate theories comprise the "umbrella" tort referred to as invasion of privacy: (1) intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) false light; and (4) publication of private facts. *See French v. Safeway Stores*, 247 Or 554, 556, 430 P2d 1021 (1967) (citing Note, *Right to Privacy: Social Interest and Legal Right*, 51 Minn L Rev 531, 539-40 (1967) (discussing Dean Prosser's division of the right of privacy into four separate torts)); *Restatement (Second) of Torts* § 652A (1977) (describing same four-part division). Only the theory of "intrusion upon seclusion" is at issue in this case.

■ In *McLain v. Boise Cascade Corp.*, 271 Or 549, 533 P2d 343 (1975), this court recognized the invasion-of-privacy theory of intrusion upon seclusion, even though the plaintiff did not recover in that case. In *McLain*, this court cited with approval the then-current tentative draft of the *Restatement* provision dealing with intrusion upon seclusion. *Id.* at 554 (citing *Restatement (Second) of Torts* § 652B (Tentative Draft No. 13, 1967)). The current *Restatement* provision, which is nearly identical to that tentative draft, provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652B

---

[2] We do not address the invasion-of-privacy claims against Smith and Capitol, because neither of those parties sought review.

(1977). Accordingly, to establish a claim, a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person.

To analyze whether the evidence was sufficient to allow the present claim to go to the jury, we will examine each of those elements. We begin by noting the specific nature of plaintiffs' claim here: They argue that defendants Reiter and Eckhart invaded their privacy by initially entering the living room of their apartment.[3]

As stated earlier, the first element of the tort of invasion of privacy by intrusion upon seclusion is an intentional intrusion, physical or otherwise. Until now, this court has not interpreted the concept of "intentional intrusion" in this tort.

Although courts in other jurisdictions often use the phrase "intentional intrusion" in this context, few define it. A notable exception is *O'Donnell v. U.S.*, 891 F2d 1079 (3d Cir 1989). The plaintiff in that case, a former patient of the Veterans Administration (VA), sued the VA for intrusion upon seclusion when it released a summary of his psychiatric treatment to his employer without having received authorization. *Id.* at 1081. The trial court granted the VA's motion for summary judgment. *Id.* at 1080.

On appeal, the Third Circuit set out to define "intentional intrusion." It gave "intent" the meaning stated in *Restatement (Second) of Torts* § 8A (1965): "that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at 1083.[4] Because the *Restatement* does not

---

[3] At trial, plaintiffs' counsel agreed that the officers' second entry was for the purpose of arresting Junior but challenged the first entry. Counsel argued that the officers initially "walk[ed] in an apartment uninvited." On appeal, plaintiffs carried the same argument forward when they stated:

"The trial court erred in not allowing the jury to determine whether defendants['] intrusion into plaintiffs' apartment (by way of entering the apartment over plaintiff[s'] objections) was offensive."

[4] That definition of "intent" is consistent with the definition that this court has given to the element of intent with respect to intentional torts generally. In *McGanty v. Staudenraus*, 321 Or 532, 550-51, 901 P2d 841 (1995), this court adopted the definition of "intent" that is found in *Restatement (Second) of Torts* § 8A (1965).

define "intrusion," the court looked to its ordinary meaning; the dictionary "defines 'intrude' to mean to thrust oneself in without invitation, permission, or welcome." *O'Donnell*, 891 F2d at 1083 (referring to *Webster's Third New Int'l Dictionary* 1187 (1966)). The court then analyzed the *Restatement*'s discussion of intrusion upon seclusion in the light of those definitions:

> "The comments and illustrations to Section 652B disclose that an 'intrusion upon seclusion' claim usually involves a defendant who does not believe that he has either the necessary personal permission or legal authority to commit the intrusive act." *O'Donnell*, 891 F2d at 1083.

The court then held that there was no intrusion, primarily because it was undisputed that the VA believed that it had the plaintiff's permission to release the disputed record. *Ibid.* Accordingly, summary judgment for the VA was proper. *Ibid.* To similar effect, see *Gilmore v. Enogex, Inc.*, 878 P2d 360, 366 (Okla 1994) ("intentional intrusion" in this tort means a *nonconsensual* intrusion).

■ Because its analysis is sound and is based on the *Restatement*—the same source from which we derive a definition of the tort of intrusion upon seclusion—we are in general accord with the above-described reasoning of *O'Donnell*. A person intrudes by thrusting himself or herself in without invitation, permission, or welcome. A person acts intentionally when he or she either desires to cause the consequence of an act or believes that the consequence is substantially certain to result from the act. By definition, then, an actor commits an intentional intrusion if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain to result from committing the invasive act in question.[5]

---

[5] We emphasize that the parties have brought the case to us only on a theory of consent. Defendant police officers and their employer have not argued before us that they had a separate justification—such as law-enforcement authority—for the initial entry, in the absence of consent.

"Consent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor." *Restatement (Second) of Torts* § 892(1) (1979). "One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." *Id.* § 892A(1). *See also id.* § 892A(3) (conditional or restricted consent is effective only within the limits of the condition or restriction).

■ A plaintiff bears the burden to establish each element of a tort. That principle applies equally to elements that involve a defendant's state of mind. *See, e.g., McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995) (in the torts of intentional interference with economic relations, intentional infliction of severe emotional distress, and wrongful discharge, an element of a plaintiff's case is a defendant's intention).

■ With the foregoing principles in mind, we turn to a consideration of the record in this case. Viewed in the light most favorable to plaintiffs, the record reasonably can be read to establish (a) that the officers lacked plaintiffs' consent to enter their apartment or had consent to enter, but only for a particular purpose, and (b) that the officers either desired to cause an unauthorized intrusion or believed that an unauthorized intrusion was substantially certain to result from their entry. On the issue of "intentional intrusion," then, the record is sufficient to create a question of fact for the jury.

■ The second element of this tort is that the intentional intrusion be upon the plaintiff's solitude or seclusion or private affairs or concerns. Viewed in the light most favorable to plaintiffs, a jury could find that their apartment was a private area in which they had secluded themselves. *See Restatement (Second) of Torts* § 652B, cmt *b* (1977) (physical intrusion into a place where a plaintiff has secluded himself or herself—such as the plaintiff's home or hotel room—can support this tort); *Gonzales v. Southwestern Bell Tel. Co.*, 555 SW2d 219, 222 (Tex App 1977) (entry into a home without permission can support this element of the tort).

The third and final element of the tort is that the intentional intrusion upon a plaintiff's private affairs or concerns be highly offensive to a reasonable person. Viewed in the light most favorable to plaintiffs, this element also is met. *See McLain*, 271 Or at 556-57 (discussing why events were not highly offensive in the circumstances).

In summary, there was evidence from which a jury reasonably could have found in plaintiffs' favor, and against defendants Reiter and Eckhart and their employer, on each element of the tort of intrusion upon seclusion. That being so,

the trial court erred in directing a verdict in favor of those defendants on this claim.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court for Smith and Capitol, and for Reiter, Eckhart, and the City of Portland, on plaintiffs' claim of invasion of privacy is reversed and remanded; the judgment against defendants Walker, Carneau, Pace, Lorz, and Bunch on plaintiffs' claim of intentional infliction of emotional distress is reversed; the supplemental judgment is reversed; and the judgment is otherwise affirmed.