Argued and submitted January 30, reversed and remanded March 12, 1997

## Donald J. KALGAARD,
*Respondent,*

*v.*

## LINDO MAR ADVENTURE CLUB, LTD.,
*Appellant.*

## (9404-02951; CA A91802)

934 P2d 637

Thomas M. Christ argued the cause for appellant. With him on the briefs were Mitchell, Lang & Smith, Robert D. Scholz and MacMillan, Scholz & Marks, P.C.

David Slader argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Defendant appeals from a judgment entered after the trial court granted plaintiff's motion for summary judgment on defendant's counterclaim for intentional interference with a prospective business relationship.[1] We conclude that there is a genuine issue of material fact, ORCP 47 C, and therefore reverse and remand.

On review of a summary judgment, we view the evidence and all reasonable inferences to be drawn from it in the light most favorable to defendant, the nonmoving party. *Stoeger v. Burlington Northern Railroad Co.*, 323 Or 569, 572, 919 P2d 39 (1996). Defendant is an Oregon corporation that operates a time-share club devoted to maintaining and operating a resort in Puerto Vallarta, Mexico. In 1993, the Mexican government threatened to foreclose on the resort property because of unpaid taxes and allegedly fraudulent time-share sales. Defendant hired legal and financial advisors to negotiate a settlement with the Mexican authorities and then assessed each time-share club member a charge of $200 to defray those expenses. In an effort to solve the club's long-term legal and financial problems, defendant also hired a managing agent, Thomas Carota, to negotiate the purchase of the resort from Douglas Cox.

Carota and Cox began negotiating in May 1993, but the negotiations broke down in July. In August, the time-share members met and ratified defendant's proposal to continue negotiating for the purchase of the resort. In September, Cox contacted defendant and indicated a desire to continue negotiations. In early October, after a series of telephone calls, Carota met with the Coxes in San Diego for approximately four hours. At Cox's request, no attorneys attended. According to Carota, he and Cox reached a tentative agreement on major issues, such as purchase price, attorney fees, security, taxes and indemnification. Carota reduced the agreement to a "Letter of Intent" that he sent to Cox on October 14, 1993. Cox requested "minor" changes in the letter. Carota agreed and on October 21, 1993, he sent a

---

[1] The judgment also dismissed plaintiff's complaint. That action is not at issue in this appeal.

facsimile letter to Cox that included the changes and stated: "Dear Doug, Please find below the changes we discussed by telephone on the Letter of Intent agreement." In a subsequent telephone call, Cox told Carota that the changes looked "fine" and that Cox would get back to him. At that point, Carota thought that he and Cox "had a deal" and he instructed defendant's attorney to prepare the final paperwork.

In August 1993, plaintiff, a time-share member who was critical of defendant's management of the resort, initiated a series of conversations with Cox about the impending sale. It is uncontradicted that plaintiff's purpose was to prevent defendant from making the deal with Cox. In late October 1993, plaintiff traveled from his home in the San Francisco Bay Area to Cox's home in San Diego to discuss defendant's efforts to purchase the resort. Within a week or two of that meeting, plaintiff and Cox met at the resort and plaintiff arranged for several meetings between Cox and other time-share members. During those meetings, plaintiff told Cox that defendant's offer was "ridiculously low," that Cox should reject any offer from defendant, and that the letter of intent "really didn't guarantee [Cox] anything."

On November 12, 1993, plaintiff sent a letter to Carota that was highly critical of Carota and of defendant's offer to buy the resort. The letter accused defendant of "putting the economic squeeze" on Cox by "[w]ithholding contractual payments" owed to him in the hope that Cox "would experience difficulties meeting his economic obligations" and thus be pressured to sell the resort. Plaintiff's letter also suggested that Carota was acting without defendant's authority, that Cox should reject the letter of intent, and that Carota had not been negotiating in "good faith" with Cox. Plaintiff sent a copy of that letter to Cox. On February 3, 1994, Cox told one of defendant's board members, John Gilbert, that he would not sell the resort to defendant.

In March 1994, plaintiff sued defendant in small claims court for return of his $200 member assessment, claiming it was "unlawful, improper and unauthorized." Defendant filed a counterclaim for tortious interference with its attempt to buy the resort. Defendant alleged damages

that exceeded the small claims court's jurisdiction and the case was transferred to circuit court.

Plaintiff moved for summary judgment on the counterclaim, arguing that he was entitled to judgment as a matter of law for two reasons. First, defendant had "judicially admitted" in a separate lawsuit in Mexico that Cox and his wife owned no interest in the resort. Second, even if plaintiff's statements about defendant, Carota and the offer were false and misleading, defendant provided no evidence that those statements had caused Cox to withdraw from the negotiations regarding the sale. In support of his argument that defendant had provided no evidence of causation, plaintiff offered excerpts from Cox's deposition in which Cox stated that he had decided against selling the property to defendant because his lawyer had told him that the deal was "totally unacceptable." Cox also stated that plaintiff had played no role in Cox's rejection of defendant's offer, that "it was pretty obvious" that the negotiations were over by the end of October, and that Cox had informed board member Gilbert of that fact in October or November.

Defendant responded that, notwithstanding Cox's statements to the contrary, the circumstantial evidence surrounding the negotiations gave rise to the inference that plaintiff had influenced Cox to withdraw from the agreement to sell the resort and thus created a question of fact that precluded summary judgment. In support of its argument, defendant provided evidence of the October negotiations between Cox and Carota, their oral agreement and Cox's decision not to complete the sale after the meetings with plaintiff and hearing plaintiff's complaints about defendant. That evidence included Carota's deposition, the letter of intent and the follow-up correspondence of October 21, 1993. Defendant also provided excerpts from Cox's deposition in which Cox stated that he had had conversations with Carota concerning the letter of intent but that Cox could not remember which aspects of the letter he had told Carota to change. Cox also acknowledged that defendant's offer of $500,000 for the resort was not "insufficient." His concern was that "there was no guaranty on that."

Defendant's claim for tortious interference with a potential business relationship requires defendant to demonstrate: (1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to economic relations, and (6) damages. *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 651, 891 P2d 639 (1995). The trial court granted plaintiff's motion for summary judgment on the ground that there was no genuine issue of material fact with respect to the fifth element, causation, in defendant's claim. It concluded that there is "nothing in the record which contradicts [Cox's statement] that his decision to reject the deal was made on advice of counsel, after talking to his wife and had nothing to do with anything that [plaintiff] may have said or done."

On appeal, defendant assigns error to the trial court's granting of summary judgment. It renews its argument that there is a material question of fact whether plaintiff caused Cox to quit negotiating with defendant for the sale of the resort, because Cox's statement that he was not influenced by plaintiff was impeached by circumstantial evidence in the record. Plaintiff responds that summary judgment is appropriate because defendant's argument is "pure speculation," the logic of which is that because negotiations started in October 1993 and broke down in February 1994, the breakdown must have been caused by plaintiff's November 1993 letter criticizing defendant. Plaintiff contends that no reasonable factfinder could conclude that that letter caused Cox to withdraw from the negotiations. In addition, plaintiff argues that summary judgment was appropriate because of defendant's judicial admission in the Mexican proceeding.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the plaintiff is entitled to judgment as a matter of law. ORCP 47 C; *Levine v. Alpha Anesthesia, Inc.*, 145 Or App 549, 553, 931 P2d 812 (1997). In order to avoid summary judgment, the record must contain evidence that would allow an objectively reasonable factfinder to find that plaintiff's influence caused Cox to withdraw from the negotiations.

■     What motivates a person to act seldom is susceptible of direct proof. *See State v. Rose,* 311 Or 274, 282, 810 P2d 839 (1991) (evidence of intent rarely is proven by direct evidence). Proof of what motivates a person to act is almost always circumstantial and inferential. *Mauri v. Smith,* 135 Or App 662, 676, 901 P2d 247 (1995), *cert den* ____ US ____ , 117 S Ct 59, 136 L Ed 2d 22, *aff'd in part, rev'd in part on other grounds* 324 Or 476, 929 P2d 307 (1996). If the record contains facts that create a plausible inference that a person's statements about his or her conduct are not true, summary judgment is inappropriate. *Downs v. Waremart, Inc.,* 137 Or App 119, 136-37, 903 P2d 888, *aff'd in part, rev'd in part on other grounds* 324 Or 307, 926 P2d 314 (1996).

■     The record contains evidence, including Carota's deposition and correspondence between Carota and Cox, that Carota and Cox had reached a tentative agreement regarding the sale of the resort on October 21, 1993. The record also indicates that the $500,000 offered by defendant was acceptable to Cox, but that Cox was concerned about whether defendant could guarantee that amount. Plaintiff, who was a critic of defendant, Carota and the proposed sale, met with Cox at the end of October and several times in November. Plaintiff sent to Cox a copy of his November 12, 1993, letter to Carota and, in various conversations with Cox after that, told Cox that defendant's offer was "ridiculously low" and that the letter of intent "really didn't guarantee [Cox] anything," which had been one of Cox's concerns. An objectively reasonable factfinder could determine from this evidence that, despite Cox's contrary statements, it was plaintiff's letter to Carota and his statements to Cox, not the advice of Cox's wife or attorney, that interfered with the ongoing negotiations between Carota and Cox and caused Cox to withdraw from those negotiations.

■     Plaintiff's alternative argument for affirming the trial court is that summary judgment was appropriate because of defendant's alleged judicial admission. Plaintiff relies on *Yates v. Large,* 284 Or 217, 223, 585 P2d 697 (1978), for the proposition that "[a]n admission of fact in a pleading is a judicial admission and, as such, is normally conclusive on the party making such an admission." That statement does not aid plaintiff here, because it referred to the binding effect

of admissions of fact in a pleading in the *same* judicial proceeding. In this case, it is not clear from the record whether defendant asserted in its pleadings in the Mexican case that Cox did not own the resort in 1993. However, even if defendant did so assert, that admission would merely be some evidence for plaintiff in this proceeding. *See Stone v. Stone*, 268 Or 446, 450, 521 P2d 534 (1974) (the plaintiff's allegation, in a prior proceeding, that the defendant owed her less money than she now claims is an admission against interest but the trier of fact is not compelled to accept it instead of other evidence to the contrary).

Because defendant has produced evidence that would permit a finding that Cox withdrew from the negotiations with Carota because of plaintiff's statement, a genuine issue of material fact exists with respect to causation.

Reversed and remanded.