Argued and submitted July 21, affirmed October 13,
reconsideration denied November 20, 1980,
petition for review denied February 4, 1981 (290 Or 519)

McDONOUGH, et al,
*Appellants,*

*v.*

JONES,
*Respondent.*

(No. 36 880, CA 16323)

617 P2d 948

Michael J. Gentry, Portland, argued the cause for appellants. With him on the briefs was Tooze Kerr Marshall & Shenker, Portland.

R. Alan Wight, Portland, argued the cause for respondent. With him on the brief was Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiffs brought this action alleging that promissory notes had been fraudulently and illegally issued to them by West Coast Finance Company, a corporation which has since undergone reorganization pursuant to federal bankruptcy laws. The defendants were corporate officers at the time the notes were issued. The trial court granted a motion for summary judgment in favor of defendant Janette Jones. From a judgment dismissing the complaint with prejudice as to Jones, plaintiffs appeal. We affirm.

The following facts are undisputed. On sixteen separate occasions between January 22, 1969, and February 22, 1973, plaintiffs deposited money with West Coast and in return received promissory notes bearing interest. Throughout this time, plaintiffs' primary contact was with R. Norman Cummings, one of the named defendants not involved in this appeal.[1] Both Cummings and Jones were officers, directors and major stockholders of West Coast. Jones' entire stock interest, however, was redeemed by the corporation on March 30, 1973, and she resigned her positions as a director and secretary-treasurer of West Coast on April 27, 1973. She neither met nor communicated with plaintiffs regarding their transactions at any time prior to or following the termination of her positions with the corporation.

On June 7, 1975, plaintiffs consolidated their investments in West Coast by exchanging the notes remaining in their possession for two notes in the amount of $30,000 each. The following spring West Coast went into receivership. On July 27, 1976, plaintiffs commenced this action for a judgment against the individual defendants in the sum of $60,000 plus interest. Plaintiffs assert a claim for common law fraud, alleging that they were induced to enter into the transactions by misrepresentations. They also seek relief under the Oregon Securities Law (ORS, chapter 59). They allege that the notes are securities which

---

[1] Defendant Patricia Nelson is also not involved in this appeal.

were unregistered and which were sold through use of false and misleading statements. In each instance, the relief sought is predicated upon the following allegation in their complaint:

"Defendants sold, participated in, or materially aided the sale of said notes as follows:

"1. Defendants authorized and directed the sale of said notes as a means of financing the business of [West Coast Finance Company];

"2. Defendant Jones authorized, and defendants Cummings and Nelson represented, that said notes were valid instruments of a company in good financial condition, that defendant Jones' personal resources insured plaintiffs' investment; and that said investment was in the nature of a savings account.

"3. Defendants omitted to inform plaintiffs that defendant Jones had withdrawn from the business; that the personal resources of defendant Jones did not insure plaintiffs' investment; that said company was not in good financial condition; that said notes were illegally issued; that the investments of certain security holders were being returned; and that said investment was not protected or insured as would be a normal bank savings account."

We review the order granting summary judgment in favor of defendant Jones on the following questions: (1) whether the action was commenced within the time limited by statute; and (2) whether there is any genuine issue of material fact such that Jones would not, as a matter of substantive law, be entitled to a judgment in her favor.[2]

### (1) *Oregon Securities Law Violations*

Plaintiffs assert a claim for misrepresentation in the sale of securities and failure to register securities. They seek relief pursuant to ORS 59.115.[3] An

---

[2] Defendant's motion for summary judgment is rather inexplicit, but appears to have been made solely for the purpose of determining whether the action was barred by the statute of limitations. On brief, both parties have addressed the issue of defendant's liability as a matter of substantive law. We do not, therefore, feel constrained to limit our discussion to the statute of limitations issue.

[3] ORS 59.115 provides in part:

action or suit under this section may not be commenced more than three years after the sale of the security. ORS 59.115(5). In this case plaintiffs deposited money with West Coast Finance on 16 separate occasions between January, 1969, and February, 1973, and received in return corporate promissory notes bearing interest. On July 7, 1975, they exchanged these notes for two larger ones carrying a slightly higher rate of interest. We assume, without deciding, that each note received by plaintiffs was a security. *See* ORS 59.015(13)(a).[4] On each occasion the completed

---

"(1) Any person who:

"(a) Offers or sells a security in violation of the Oregon Securities Law or of any rule or order of the commissioner, or of any condition, limitation or restriction imposed upon a registration under the Oregon Securities Law; or

"(b) Offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable as provided in subsection (2) of this section to the person buying the security from him.

"(2) The purchaser may recover, in addition to costs and reasonable attorney fees at trial and on appeal:

"(a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment at the rate of six percent per annum, or at the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security; or

"(b) If he no longer owns the security, damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of six percent per annum from the date of disposition.

"* * * * * "

Although plaintiffs have sued on the first 16 notes they received as well as the two for which the 16 were exchanged, they seek but one recovery. The record does not clearly reveal their theory. In their fourth amended complaint, plaintiffs allege that all of the notes were exchanged for a certificate of the corporation issued pursuant to a plan of reorganization under the federal bankruptcy laws. We can only surmise that their claim is based on subsection (2)(b) of ORS 59.115.

[4] ORS 59.015(13)(a) provides:

transaction constituted a "sale" of a security. ORS 59.015(11)(a).[5]

■  The first 16 sales all occurred more than three years prior to the date on which plaintiffs filed their complaint. In their complaint, plaintiffs allege that the sale of the notes was part of a continuing course of conduct. Their purpose, apparently, is to have their cause of action accrue from the date of the last sale, July 7, 1975. This position is untenable. First, plaintiffs' own depositions reveal that the transactions were unrelated events, each initiated by themselves. More importantly, however, the notes were separately actionable, beginning at the time of each individual sale. Plaintiffs' cause of action on the notes accrued on the date each was sold. *Cf. Davis v. Bostick,* 282 Or 667, 580 P2d 544 (1978); *Bartel v. Mathias,* 19 Or 482, 24 P 918 (1890). Defendant was entitled to summary judgment relieving her from any liability under ORS 59.115 arising out of the issuance of these first 16 notes.

The last sale, the exchange transaction, occurred within the three-year period of limitation. The central issue here, however, is whether Jones, as a matter of substantive law, can be held vicariously liable for any impropriety in the sale of the notes by

_____

"As used in the Oregon Securities Law, unless the context otherwise requires:

"* * * * * *

"(13)(a) 'Security' means a note * * *."

*See also Pratt v. Kross,* 276 Or 483, 493, 555 P2d 765 (1976); *cf. Foelker v. Kwake,* 279 Or 379, n 7, 568 P2d 1369 (1977).

[5] ORS 59.015(11)(a) provides:

"As used in the Oregon Securities Law, unless the context otherwise requires:

"* * * * * *

"(11) (a) 'Sale' or 'sell' includes *every disposition or* attempt to dispose of, contract to sell, attempt or offer to sell, *exchange of,* option for the sale of, solicitation of an offer to purchase, or subscription for, *a security or an interest in a security for a consideration* * * * ." (emphasis supplied)

West Coast. Subsection (3) of ORS 59.115 provides in part:

> "(3) Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, *and every person who participates or materially aids in the sale* is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that he did not know, and,in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. * * * " (emphasis supplied)

In July of 1975, the time of this last transaction, Jones was no longer an officer, director or shareholder of the corporation. She did not participate in the sale. The only basis upon which she could be held personally liable, therefore, is if she in some way "materially aided" consummation of the sale. ORS 59.115(3), *supra.* Plaintiffs have alleged that, when Jones was involved in the corporation, she authorized Cummings to make representations concerning the financial condition and backing of the corporation, and concerning the validity of the notes and safety of plaintiffs' investments. If plaintiffs relied on these representations when they entered into the exchange transaction in 1975, then, arguably, Jones' authorization was in material aid of the sale. It is upon this basis that we examine the order granting summary judgment.

■ ■ In her affidavit in support of the summary judgment motion, Jones asserts that she did not at any time authorize Cummings to make the representations he is claimed to have made. Plaintiffs submitted opposing affidavits by which they attempt to refute this assertion. Their affidavits, however, are based solely on "information and belief." The affidavits are not made on personal knowledge, and the statements would, if given as testimony, be objectionable as being hearsay. These affidavits are incompetent to raise an issue of fact on motion for summary judgment and will

be disregarded. Former ORS 18.105(4);[6] 6, pt. 2, Moore's Federal Practice § 56.22[1]. Plaintiffs are thereby left only with the allegations of their complaint; these are not sufficient to preserve factual issues. *Gleason v. International Multifoods Corp.*, 282 Or 253, 577 P2d 931 (1978); *Comley v. State Bd. of Higher Ed.*, 35 Or App 465, 582 P2d 443 (1978); ORS 18.105(4). We must, therefore, accept as true the facts as set forth by Jones in her supporting affidavit. *Comley v. State Bd. of Higher Ed.*, 35 Or App at 469-70. We hold that she was entitled to a judgment as a matter of law, because there is no disputed issue of fact regarding her authorization of the representations made by Cummings.

### (2) *Common Law Fraud*

■ Plaintiffs also assert a claim for fraud, alleging they were induced to deposit their money with West Coast by means of misleading statements. All of these statements were made by Cummings. Defendant Jones had no direct contact with plaintiffs, and, as we have already found, there is no evidence that she authorized Cummings to make the representations. Her liability, if any, is based solely on her capacity as an officer and director of the corporation.

The Supreme Court recently stated:

" * * * [I]n order to hold the officer of a corporation liable for fraud by an agent or employee of the corporation it is necessary to show that the officer had

---

[6] ORS 18.105(4), which was in effect at the time this action was commenced, provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

knowledge of the fraud, either actual or imputed, or that he personally participated in the fraud." *Osborne v. Hay,* 284 Or 133, 145-46, 585 P2d 674 (1978), citing *McFarland v. Carlsbad Sanitorium Co.,* 68 Or 530, 536-37, 137 P 209 (1914), and *Hoff v. Peninsula Drainage Dist.,* 172 Or 630, 643, 143 P2d 471 (1943).

In her affidavit Jones denies having knowledge of the statements. Plaintiffs again have not properly controverted this averment, and they have produced no evidence providing a basis for imputing such knowledge to defendant. Summary judgment was appropriate on this claim as well.

Affirmed.