Argued and submitted February 7, reversed and remanded in part; otherwise
affirmed August 10, 1994

# Francis S. WHELAN,
*Appellant,*

*v.*

# ALBERTSON'S, INC.,
a Delaware corporation,
Brian Flemming,
*Respondents,*

*and*

Jeffrey Allen SCHEDIN,
*Defendant.*

(9206-03848; CA A79486)

879 P2d 888

Kelly E. Ford argued the cause and filed the briefs for appellant.

Anne E. Denecke argued the cause for respondent Albertson's, Inc. With her on the brief were Corbett Gordon and Bullard, Korshoj, Smith & Jernstedt.

Debra L. Hall argued the cause for respondent Brian Flemming. With her on the brief was Crispin & Associates.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Riggs, Judge.

RIGGS, J.

## RIGGS, J.

Plaintiff appeals a judgment granted pursuant to ORCP 21A(8) dismissing his claims for intentional infliction of emotional distress, interference with contractual relations, battery, civil intimidation and negligence. We affirm in part and reverse in part.

We take as true the facts alleged in the complaint. Plaintiff was a security guard employed by American Protective Services (APS). APS assigned plaintiff to work for an Albertson's store owned by defendant Albertson's, Inc. (Albertson's). Plaintiff, who was unarmed, was required to discourage drug dealing in the parking lot and to eject intoxicated and disruptive people from the store.

Plaintiff reported to defendant Flemming, who was the store manager on duty who supervised his work. Schedin, a defendant below, was a non-supervisory employee. Soon after plaintiff went to work at Albertson's, Flemming and Schedin began repeatedly to refer to plaintiff as "Serge," after an effeminate character in the film "Beverly Hills Cop." In front of plaintiff and other employees, Flemming and Schedin repeatedly referred to plaintiff as a "queer" and imitated his allegedly effeminate characteristics. Plaintiff repeatedly told Flemming and Schedin that he was not homosexual and that their conduct and comments were offensive.

Flemming and Schedin continued their ridicule and led other employees and the public to believe that plaintiff was homosexual. For example, in the presence of customers, Flemming asked plaintiff if he had "fucked" a woman he dated, and then said "you must not have, because a woman does not have what you want." Also, Flemming instructed a cashier to refer to plaintiff as "Serge" over a public address system, which she did on one occasion. Plaintiff became concerned that allegations of homosexuality would make him vulnerable to violent acts by some elements of the store's clientele.

The verbal harassment peaked when plaintiff mentioned to Flemming that the microwave was dirty, and Flemming asked Schedin to clean it. Schedin became angry at plaintiff and uttered a string of vulgarities that included "you

asshole" and "you queer." Customers, employees and Flemming witnessed the outburst. Flemming, who supervised Schedin as well as plaintiff, did not attempt to stop Schedin's outburst. Schedin later saw plaintiff in a private area of the store, called him a "fucking queer asshole" and shoved him hard in the chest with both hands. Plaintiff called for Flemming's assistance. As Schedin continued to swear at plaintiff and to maintain a threatening stance, plaintiff told Flemming about the shoving incident. Flemming asked Schedin what he wanted him to do, and Schedin replied, "I don't want this fucking queer to be around me or say anything to me." Flemming then ordered plaintiff to stay away from Schedin.

The behavior of Flemming and Schedin stripped plaintiff of the authority that he needed to control the store's clientele. Plaintiff complained in writing to Flemming's supervisor, but the verbal harassment continued for the next two shifts. After that time, APS removed plaintiff from his assignment at Albertson's.

Plaintiff alleged several claims for relief against defendants Flemming, Albertson's and Schedin. He appeals the dismissal of his claims of intentional infliction of emotional distress and negligence against Flemming and Albertson's and the claim of interference with contractual relations against Flemming. He also appeals the dismissal of claims that Albertson's was vicariously liable for Schedin's battery and civil intimidation.[1]

Plaintiff's claims were dismissed for failure to state a claim. ORCP 21A(8). Whether a complaint states a claim is a question of law. *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992). When reviewing a judgment entered for failure to state a claim, we treat the facts alleged in the complaint as true. *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992).

■    We first consider whether plaintiff stated a claim for intentional infliction of emotional distress against Flemming. In order to state that claim, a plaintiff must plead that the defendant intended to inflict and caused severe emotional

---

[1] The court entered a stipulated judgment for battery and civil intimidation against Schedin.

distress, and that the defendant's acts were "an extraordinary transgression of the bounds of socially tolerable conduct." *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989). Plaintiff pleaded that Flemming acted with the intent to demean and humiliate him, resulting in his extreme embarrassment, humiliation and emotional distress. The question disputed by the parties is whether a reasonable jury could find that Flemming's insults transgressed "the bounds of socially tolerable conduct."

■ Our inquiry into whether Flemming's insults are actionable begins with an analysis of those cases where statements have been held to be socially intolerable and those where statements were held to be merely rude. We have held that racial and ethnic slurs can be socially intolerable. *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994). Language used to sexually harass, such as "all women were good for was between their legs," has also been deemed socially intolerable. 128 Or App at 408. In contrast, unfounded, private accusations of lying and sabotage were characterized as rude and boorish, but not actionable. *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or App 234, 828 P2d 479, *rev den* 314 Or 176 (1992). Here, the insults directed at plaintiff were sexual in nature and resemble the socially intolerable sexual references in *Lathrope-Olson v. Dept. of Transportation, supra.*

If the content of statements alone is not dispositive, we also consider the context and repetition of the insults, in determining whether the statements were socially intolerable.

> "The invitation to a woman to illicit intercourse, insufficient in itself [to be actionable], becomes extreme outrage when it is prolonged and repeated to the point of hounding, and accompanied by advertising in the form of indecent pictures or exposure." Prosser, *Torts* § 11 at 48, 49 (3d ed 1964). Quoted in *Pakos v. Clark*, 253 Or 113, 126, 453 P2d 682 (1969).

Here, while taunts of "queer," and "Serge" might not be actionable in isolation, their repetition in the presence of customers and co-workers, especially in the light of plaintiff's work, weighs in favor of holding that a reasonable jury could find that they were socially intolerable. Likewise, asking

plaintiff if he "fucked" his date is less socially tolerable when the question is posed in front of customers. We hold that a reasonable jury could find that Flemming's course of conduct was extraordinary and beyond the limits of social toleration. Thus, it was error to dismiss the claim against Flemming for intentional infliction of emotional distress.

■■    We next consider whether plaintiff stated a claim against Flemming for intentional interference with contract.[2] Plaintiff must plead that Flemming, with improper means or purpose, interfered with plaintiff's current contractual relationship, injuring that relationship or making it more onerous to perform. *Top Service Body Shop v. Allstate*, 283 Or 201, 209-10, 582 P2d 1365 (1978); *see also Franklin v. PCC*, 100 Or App 465, 468-69, 787 P2d 489 (1990). Plaintiff pleaded that Flemming maliciously interfered with his contract with APS by making his performance at Albertson's, required by that contract, so onerous that APS had to transfer him. Plaintiff adequately alleges a claim against Flemming for intentional interference with contract.

■    Plaintiff also assigns error to dismissal of his negligence claim against Flemming. According to plaintiff, Flemming had a duty to train and supervise Schedin and his other subordinates so that the subordinates would not harass plaintiff. In *Buchler v. Oregon Corrections Div.*, 316 Or 499, 505, 853 P2d 798 (1993), the Supreme Court cited the *Restatement (Second) of Torts* § 315 (1965) for the proposition that a duty to control a third person arises in only two contexts. The first context is when there is a special relationship between the plaintiff and the defendant. In *Buchler*, the court looked to the common law to determine whether a jailer had a special relationship with the plaintiff, a member of the public. It found no special relationship. The court then turned to the second context in which a defendant is liable for the acts of third parties: when the defendant occupies a special status in relation to the actor. Citing the *Restatement (Second) of Torts* § 319, the court held that jailers have a special status, and they must exercise reasonable care to protect third parties from dangerous people in the jailer's custody.

_____
[2] This tort is also known as "interference with an economic relationship," or, in the employment setting, as "interference with an employment relationship."

In this case, there is no statute, case or common law rule that establishes a special relationship between a supervisor and tortfeasors or victims under a supervisor's control. Absent a special status or relationship, Flemming had no duty to protect plaintiff from the actions of Schedin and other co-workers.

■ Plaintiff's negligence claim against Albertson's seeks to impose liability on Albertson's for negligent supervision of Flemming and an unnamed store manager. As in plaintiff's claim against Flemming, to prevail on a theory that Albertson's failure to protect plaintiff from third parties, plaintiff must show that Albertson's has a special relationship with him or occupies a special status in regard to Flemming and the unnamed store manager. Oregon law is not clear on the existence of a special relationship between an employer and an employee for purposes of negligent supervision. Following *Buchler v. Oregon Corrections Div., supra,* if we look to the *Restatement (Second) of Torts*, we find that section 314B treats the employment relationship as a special one which requires an employer to protect the employee from known, imminent danger of serious harm. Here, plaintiff does not allege that he was ever put in imminent danger of serious harm.

Turning to the second situation in which a defendant has liability for the acts of third parties, we look for whether Albertson's occupies a special status in relation to Flemming and the other manager. The *Restatement (Second) of Torts* § 317 imposes liability on an employer when the employee is on the employer's premises, and the employer knew or should have known of the necessity of controlling the employee. Even if we accept *Restatement (Second) of Torts* § 317 as the law of Oregon, plaintiff has not stated a valid basis for imposing liability on Albertson's, because he did not plead that Albertson's knew or should have known of the managers' malfeasance. The negligence claim against Albertson's was also properly dismissed.

Plaintiff's next assignments of error assert that the trial court erred in dismissing the claims against Albertson's for intentional interference with contract, intentional infliction of emotional distress, civil intimidation and battery. Those claims are premised on the theory that Albertson's is vicariously liable for the acts of Flemming and Schedin.

■■ An employer is vicariously liable for the intentional tortious act of an employee if the act took place within the temporal and spatial limits of the employment relationship; if the employee was motivated, at least in part, by a motive to serve the employer, and if the act was one that the employee was hired to perform. *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404 (1988). Plaintiff makes a number of allegations to show that Flemming and Schedin undertook their course of harassment in order to serve Albertson's:

(1) Flemming used humiliation as a technique to increase his effectiveness as a supervisor, improve the morale of other employees, please Schedin and control plaintiff.

(2) Schedin felt that plaintiff's perceived homosexuality prevented Schedin from doing his job. Therefore, Schedin humiliated plaintiff in an effort to have plaintiff removed from the store.

(3) Schedin thought that plaintiff was blocking his way and shoved plaintiff so that he could return to his duties.

(4) Job-related conditions, a desire to perform well for Albertson's and personal revulsion caused Schedin to lose control of himself.

Plaintiff alleges that Flemming's insults were made within the temporal and spatial limits of the job, with the business purpose of improving morale, by a supervisor whose duties included intervening in disputes between employees. Plaintiff thus pleaded facts sufficient to impose vicarious liability on Albertson's for Flemming's insults. It was error to dismiss the claims seeking to impose vicarious liability against Albertson's for Flemming's interference with plaintiff's contract and his intentional infliction of emotional distress. However, the court properly dismissed the claims seeking to impose vicarious liability for Schedin's acts, because plaintiff did not identify and sufficiently plead a connection between Schedin's harassment and acts that Schedin was hired to perform.

Plaintiff stated claims against Flemming for intentional infliction of emotional distress and interference with contract, and also against Albertson's for Flemming's intentional infliction of emotional distress and interference with contract. We reverse the dismissal of those claims.

Dismissal of claims of intentional infliction of emotional distress and interference with contractual relations against defendant Brian Flemming and of claims for vicarious liability against defendant Albertson's, Inc., reversed and remanded; otherwise affirmed.