Argued and submitted February 1, reversed and remanded in part; otherwise affirmed October 11, 1995

# Lee RICHER
## and Yvonne Richer,
## husband and wife,
### *Appellants,*

*v.*

# Lawrence POISSON,
### *Respondent.*

## (92-CV-0436-TM; CA A83923)

903 P2d 932

Michael Henderson argued the cause and filed the brief for appellants.

Robert L. Nash argued the cause for respondent. With him on the brief was Dunn, Carney, Allen, Higgins & Tongue.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Armstrong, J., concurring in part, dissenting in part.

## WARREN, P. J.

Plaintiffs appeal from a judgment dismissing their complaint for failure to state a claim for intentional infliction of emotional distress, ORCP 21 A(8), and plaintiff Lee Richer (Richer) appeals from a summary judgment on his claim for malicious prosecution. ORCP 47 C. We affirm in part and reverse in part.

Plaintiffs leased retail space from defendant, who operated a business adjacent to plaintiffs' store. The parties had an acrimonious relationship, and on January 6, 1991, plaintiffs vacated that space. The next day, defendant noticed that some of his business signs were missing. Defendant met with Officer Fields about the signs and told him that Richer might have taken them. Fields decided to investigate and contacted Richer and numerous others. Richer admitted that he told two people who helped him move to take the signs down and put them in a dumpster behind the building. Fields continued his investigation and later that day reinterviewed Richer about the signs. Again, Richer told Fields that he had the signs taken down. Specifically, Richer said he had instructed his two sons-in-law to take down the signs. Fields then spoke with the sons-in-law who stated that they had, at Richer's instruction, removed the signs and put them in a dumpster behind the building. As a result of Fields' investigation, Richer was prosecuted for theft and criminal mischief. Richer prevailed at trial.

Plaintiffs then brought this action, in which they asserted several claims for relief. After several rounds of motion practice and repleading, only plaintiffs' claim for intentional infliction of emotional distress and Richer's claim for malicious prosecution remained. Later, the trial court granted defendant's motion to dismiss plaintiffs' claim for intentional infliction of emotional distress for failure to state a claim. ORCP 21 A(8). The trial court also granted defendant's motion for summary judgment on plaintiff's malicious prosecution claim. ORCP 47 C.

Plaintiffs appeal the trial court's judgment dismissing both claims. We discuss first their assignment that the trial court erred in dismissing their claim for intentional infliction of emotional distress. In reviewing the granting of a

motion to dismiss for failure to state a claim, we assume the truth of all allegations, as well as any inferences that may be drawn from the allegations. *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992). We determine whether the complaint states a claim as a matter of law. *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992).

■　　　In pleading a claim for intentional infliction of emotional distress, the plaintiff must allege facts showing that the defendant intended to cause the defendant severe emotional distress or knew that such distress was certain or substantially certain to result from the defendant's conduct, that the defendant did cause the plaintiff severe mental or emotional anguish and that the defendant's action was outrageous in the extreme and exceeded a reasonable limit of socially tolerable conduct. *McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995); *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989). Here, plaintiffs pleaded eighteen acts, which they allege constituted intentional infliction of emotional distress. The trial court observed that ten of those acts occurred more than two years before plaintiffs filed this action and precluded them. *See* ORS 12.110(1). It then concluded that the remaining allegations were insufficient to state a claim.

■　　　Plaintiffs argue that the trial court erred in not considering all eighteen acts, because they were part of a "continuing tort." We reject that argument, because a series of discrete acts, even though connected in design or intent, is not a continuing tort. *Davis v. Bostick*, 282 Or 667, 674, 580 P2d 544 (1978); *see also Holdner v. Columbia County*, 51 Or App 605, 627 P2d 4 (1981). Therefore, we discuss only whether plaintiffs' allegations about conduct by defendant that occurred after December 8, 1990, state a claim.

■　　　Plaintiffs allege that, after that date, defendant sprayed graffiti over their store window, harassed their customers and employees by making obscene gestures, set the heat too high, sent their customers to competitors, placed paper over their business signs and made "harassing" telephone calls to plaintiffs. Although some of that conduct is merely annoying or crude, the allegations that defendant, for the purpose of causing plaintiffs' emotional distress, painted graffiti on their windows, harassed them by telephone and

harassed their customers by making obscene gestures, describe offensive conduct that may be outrageous in the extreme, depending on the nature of the specific acts. We conclude that plaintiffs have stated a claim for intentional infliction of emotional distress.

■ We now discuss Richer's assignment that the trial court erred in granting summary judgment against him on his claim for malicious prosecution. We review the evidence in the summary judgment record in the light most favorable to plaintiff to determine whether there are any genuine issues of material fact and whether plaintiff is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978).

■ At the hearing on the motion, defendant objected to certain statements in Richer's opposing affidavit and moved to strike those statements on the basis that they were made without personal knowledge and constituted inadmissable hearsay. Specifically, Richer stated that the defendant caused the signs to disappear himself and therefore, that defendant had lied to police by telling Fields that Richer took the signs. The trial court granted defendant's motion, but struck only Richer's statement that defendant had lied to police. The trial court then granted summary judgment for defendant, reasoning that even if there was a genuine issue of fact as to whether the defendant took the signs himself, defendant could not be held liable for malicious prosecution. It concluded that, after making initial contact with the police, defendant had no meaningful contact with the ongoing criminal investigation or prosecution. Further, the investigation by Field and the decision by District Attorney Brinich to prosecute Richer were made independently, without consideration of any of defendant's statements of claims.

On appeal, plaintiff argues that the trial court erred in striking his statement that defendant lied. Plaintiff cites *Humbert v. Knutsen et al*, 224 Or 133, 354 P2d 826 (1960), for the proposition that a defendant is not insulated from liability when the defendant misrepresents the facts to the police, or withholds information, because it precludes the independent exercise of the investigating officer's and prosecutor's discretion. Plaintiff contends that the stricken portion of his opposing affidavit raises a genuine issue of fact about whether

defendant lied. He further argues that the issue of the extent to which that false information influenced further investigation by the police and the ultimate decision to prosecute is a genuine issue of material fact.

Assuming, without deciding, that plaintiff's statement that defendant lied to police is competent evidence and therefore should not have been stricken, defendant was entitled to summary judgment because there is no evidence in the summary judgment record that the investigating officer or the prosecutor acted on the information defendant gave police.

■ As we said in *Waldner v. Dow*, 128 Or App 197, 876 P2d 785 (1994), the truth or falsity of a defendant's statements is relevant *only* if the prosecution was influenced by that information. *Id.* at 200. We noted that, under *Humbert*, an action for malicious prosecution based on false statements by a private person to police is actionable only where the information *upon which the official acted* was known to be false:

"Under that standard, the fact that defendant made statements to the prosecutor is not, by itself, sufficient to support an action for malicious prosecution, even if the statements were false. Those statements must be what the prosecutor acted on to begin the prosecution." 128 Or App at 201.

In this case, even if defendant lied to police, there is no evidence in the summary judgment record controverting Fields' affidavit in which he stated that defendant did not in any way influence the actions he took in conducting his investigation or the conclusions he reached. Nor is there any evidence in the record that controverts Brinich's affidavit in which he stated that the decision to prosecute Richer was *solely* his own, based on his review of Fields' police report. Accordingly, the trial court did not err in granting defendant's motion for summary judgment on the malicious prosecution claim.

Judgment on claim for intentional infliction of emotional distress reversed and remanded; otherwise affirmed.

**ARMSTRONG, J.,** concurring in part, dissenting in part.

I concur in the majority's decision to affirm the summary judgment for defendant on plaintiff Lee Richer's claim for malicious prosecution, but write separately on that claim to emphasize what I believe to be the correct analysis of it. I dissent from the decision to reverse the dismissal of plaintiffs' claim for intentional infliction of emotional distress for failure to state a claim.

The elements of the tort of intentional infliction of emotional distress are well established in Oregon. To state such a claim, a plaintiff must allege facts on which a factfinder could find

"that the defendant intended to inflict and caused severe emotional distress, and that the defendant's acts were 'an extraordinary transgression of the bounds of socially tolerable conduct.' "

*Whelan v. Albertson's, Inc.,* 129 Or App 501, 504-05, 879 P2d 888 (1994) (citation omitted).

The determination whether a plaintiff has alleged facts sufficient to satisfy the first two elements of the tort presents little difficulty in most cases, and I agree with the majority that plaintiffs have done so in this case. It is the third element of the tort that can be difficult to apply, however, because there is little to guide courts in deciding whether the alleged conduct constitutes "conduct which a reasonable jury could find [to be] beyond the farthest reaches of socially tolerable behavior." *Hall v. The May Dept. Stores,* 292 Or 131, 137, 637 P2d 126 (1981).

It is difficult to discern the boundary between tolerable and intolerable behavior, because the boundary is necessarily imprecise.[1] Nevertheless, it is our obligation to determine that boundary in evaluating whether the conduct

---

[1] The imprecision of the boundary is reflected in the third element of the tort, which refers to conduct that goes "beyond the farthest reaches of socially tolerable behavior." *Hall,* 292 Or at 137. That phrasing suggests that there is a band of behavior delimited by the views of the most sensitive and the least sensitive members of a community on what constitutes intolerable behavior. Hence, conduct that crosses the boundary is conduct that would be considered by every reasonable person in a community to be beyond the pale, because the standard requires conduct that is "beyond the farthest reaches of socially tolerable behavior."

alleged in a given case went beyond it. *See, e.g., Mauri v. Smith*, 135 Or App 662, 901 P2d 247 (1995).

We often look to the facts of other cases involving this tort for guidance on the issue, *see, e.g., Hall*, 292 Or at 136, but it is not helpful to do that in this case because the conduct alleged by plaintiff is unlike anything previously discussed in the Oregon cases. The resolution of the issue depends, then, on our own judgment about the community's view of defendant's conduct.

The conduct the majority considers sufficient to support a finding that defendant engaged in conduct that was outrageous in the extreme consists of (1) making harassing telephone calls to plaintiffs, (2) painting graffiti on their store windows and (3) making obscene gestures to their customers and employees. 137 Or App at 160. As to the last point, plaintiffs alleged that defendant harassed plaintiffs' employees, *not* their customers, by

"loitering by the door to [plaintiffs'] business, making obnoxious faces at customers and employees, and making obscene gestures."

The alleged conduct may be crude, rude and boorish, but it is not outrageous in the extreme.

On the telephonic harassment, plaintiffs alleged that defendant "[c]onducted a course of telephone harassment to [plaintiffs'] home and business" from November 1990 until June 1991. Significantly, plaintiffs did not allege the number, content or nature of the calls, other than to label them "harassing." Without more information, I do not believe that the allegation identifies conduct that could be considered to be outrageous in the extreme.

Finally, on the graffiti, plaintiffs allege that defendant "spray painted graffiti over [plaintiffs'] display windows" between mid-November 1990 and January 1991. Again, plaintiffs do not allege the content of the graffiti, nor how frequently defendant applied it.

Taken together, the conduct alleges a pattern of obnoxious and boorish behavior, at least some of which may be actionable under theories other than intentional infliction of emotional distress. I do not believe, however, that the

alleged conduct properly can be found to be outrageous in the extreme, so I respectfully dissent from the decision holding that plaintiffs have alleged a claim for intentional infliction of emotional distress.

On the claim for malicious prosecution, the majority holds that the claim fails as a matter of law because the prosecutor who filed the charge against plaintiff Lee Richer testified without contradiction that the decision to charge Richer was solely his own. According to the majority, that testimony precludes a finding that defendant initiated the prosecution against Richer, which is one of the elements of the tort. *See, e.g., Rogers v. Hill*, 281 Or 491, 497-98, 576 P2d 328 (1978).

Richer argued below that the prosecutor's testimony is not determinative on that issue, because the prosecutor's decision necessarily was based on information provided to the prosecutor by defendant that defendant knew to be false. Richer's statement of the relevant legal principles is correct. A person can be liable for initiating a prosecution by providing knowingly false information to public officials that leads them to file a criminal charge, if the false information affects the decision by the responsible officials to file it. That is true even though the official who files the charge conducts his or her own investigation of it and makes an independent decision to file it.

The Supreme Court explained that principle in *Humbert v. Knutson et al*, 224 Or 133, 137-38, 354 P2d 826 (1960), as follows:

"A person may institute a criminal proceeding, as the word 'institute' is used in a case of malicious prosecution, by either signing the charge himself or inciting or procuring another to do so. This other may be a private individual or a public officer. However, if it is a public officer and a full, complete and accurate disclosure is made to the officer and no undue influence is used upon him, thus leaving the decision to prosecute entirely to the officer's uncontrolled discretion, there is no liability on the part of the private informant if the charge proves to be false. * * * *If pertinent information is withheld or there are misrepresentations made as to the facts*, or undue influence brought to bear, *there can be no intelligent exercise of the officer's discretion,*

*and the person thus procuring the action of the officer is not insulated from responsibility.*"

(Citations omitted; emphasis supplied.)

Richer argues that there is evidence in the summary judgment record that would support a finding that defendant disposed of his own signs. If there were such evidence, Richer would be entitled to proceed to trial on his claim against defendant for malicious prosecution, notwithstanding the testimony by the prosecutor that his decision to charge Richer was solely his own. That is because the information withheld by defendant would have prevented the prosecutor from making an intelligent decision about whether to prosecute Richer for removing the signs.

The problem, however, is that Richer did *not* show that there was a triable issue of fact about whether defendant had withheld any pertinent information about the signs when he reported their loss. Richer testified in his affidavit in opposition to defendant's motion for summary judgment that the

"disappearance of [defendant's] signs was his own making, and [defendant] knew when he told the police that I took [them], that that was not true."[2]

Those statements are not competent to establish anything about defendant's handling of the signs, because they do not show that they are based on any personal knowledge by Richer about the disposition of the signs or defendant's knowledge of it. *See* ORCP 47 D.[3] Richer also submitted an

---

[2] On defendant's motion, the trial court struck a portion of the above-quoted testimony. I believe that the court was correct in doing so. Nevertheless, Richer argues on appeal that the trial court erred in striking the evidence, and that the stricken evidence should be considered to determine whether the court erred in granting summary judgment. Because I do not believe that the stricken evidence establishes the existence of a disputed issue of material fact, it is not necessary to determine whether the trial court erred in striking it.

[3] Our decisions have split over whether this court can consider evidence that is in a summary judgment record, but that does not satisfy the requirements of ORCP 47 D for evidence submitted in opposition to a summary judgment motion, to determine whether a trial court erred in granting summary judgment. *Compare, e.g., Knez Building Materials Co. v. Manikas,* 113 Or App 220, 222 n 2, 831 P2d 80 (1992) *with Paulsen v. Continental Porsche Audi,* 49 Or App 793, 799 n 3, 620 P2d 1384 (1980) *and McDonough v. Jones,* 48 Or App 785, 791-92, 617 P2d 948, *rev den* 290 or 519 (1980). In this case, I would hold that we should not consider such evidence. Hence, the evidence in Richer's affidavit about defendant's role in the disposition of

affidavit from a member of his family who was involved in the removal of the signs, but that affidavit also does not create an issue of fact about whether defendant provided false information to the police about the loss.

Given the record on summary judgment, the trial court did not err in granting defendant's motion for summary judgment on Richer's claim for malicious prosecution. I therefore concur in the decision to affirm the trial court's dismissal of that claim.

---

the signs should not be considered to determine whether the trial court erred in granting summary judgment in favor of defendant, because the testimony was not shown to be based on personal knowledge.