IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| COMMONS AT CEDAR MILL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 170126N |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | **ORDER** |

This matter came before the court on Plaintiff's Motion for Summary Judgment and

Defendants' Cross-Motions for Partial Summary Judgment. An oral argument was held in the

Oregon Tax Courtroom on September 14, 2017. Cynthia M. Fraser and Robert D. Doeckel

appeared on behalf of Plaintiff. Brad Anderson appeared on behalf of Defendant (the County).

Daniel Paul and Kristin Ennis appeared on behalf of Defendant-Intervenor (the Department).

I. STATEMENT OF FACTS

Plaintiff owns a rental housing development identified as Accounts R636841 and

R636869 (subject property). (Ptf's Mot for Summ J at 2.) The subject property was subject to a

government restriction on use starting in August 1995 under a recorded agreement between the

Housing Authority of Washington County (the Authority), Schnitzer Investment Corp., and GSL

Cedar Mill Investors, LLC, (the original owners). (Fraser Decl, Ex 1.) The Authority issued

bonds to finance the original owners' acquisition, rehabilitation, and operation of the subject

property. (*See id.* at 4.) In exchange, the original owners agreed to reserve a number of units for

low income tenants at reduced rates, and imposed covenants and restrictions that ran with the land. (*Id.* at 4–5, 8, 13.)

A.      *Transfers of the Subject Property; Special Assessment*

The subject property was transferred in 2003 to an Arizona limited partnership and a living trust (prior owners). (Fraser Decl, Ex 2.) It was transferred again in 2007 to Plaintiff's predecessor in interest.[1] (Decl of Fraser at ¶ 5, Ex 3.) The purchase in 2007 included a title report and due diligence. (Fraser Decl, Ex 3 at 5–10.) Thomas V. Clarey (Clarey), Plaintiff's Manager, declared that, before he purchased the subject property, he

> "hired special legal counsel to perform due diligence on the property. As part of that due diligence, [he] requested from the sellers any and all copies of any documents related to the property that were recorded or otherwise filed with any government agency. The sellers produced copies of the land use agreement, which included the government restriction on use. The sellers did not have any record of applying for special assessment under ORS 308.707, nor any record of filing the 'election form' required by ORS 308.707 and ORS 308.712. The sellers did not have any records of receiving written notice from the County * * * that the property was approved for special assessment as required by ORS 308.709(7)."

(Second Clarey Decl at ¶¶ 1, 9.) Clarey declared that Plaintiff "did not elect to have the Subject Property specially assessed under ORS 308.707[,]" and neither he "nor any other agent or representative of [Plaintiff] ever completed or submitted an application" for special assessment. (Clarey Decl at ¶¶ 3–4.)

Defendants disagree that the subject property was never specially assessed. Joe Nelson, Appraisal Division Manager for the County, declared that the subject property "was in special assessment for low income housing (ORS 308.701 to 308.724) from 2003 up to and including 2016." (Nelson Decl at ¶¶ 1, 3.) Additionally, the subject property's maximum assessed value (MAV) and assessed value (AV) were each determined pursuant to ORS 308.707, and a specially

---

[1] The buyer was Tandem Development Corporation, not Commons at Cedar Mill, LLC. (*See* Ex 3.) Tandem Development Corporation was Plaintiff's predecessor in interest. (Decl of Fraser at ¶ 5.)

assessed value (SAV) was determined in 2003. (*Id.* at ¶¶ 4–6.) "In 2003, the RMV [real market value] for the subject property was not re-determined pursuant to ORS 308.205(2)(d) (government restriction)." (*Id.* at ¶ 7.) Theresa Ellis, Property Tax Supervisor for the County, declared that "[t]he tax bills for the [subject property] have all contained the following notice at least since 2009, 'LOW INCOME HOUSING POTENTIAL [ADDITIONAL] TAX LIABILITY.' " (Ellis Decl at ¶¶ 1, 3; *see* Ex 1 to Ellis Decl.) The County did not retain the tax bills prior to 2009. (*Id.* at ¶ 4; *see also* Ex 1.)

B.      *Government Restriction on Use*

The government restriction on the subject property ran at least until 15 years after the date on which 50 percent of the units were occupied. (Fraser Decl, Ex 1 at 6.) Plaintiff believes that 50 percent occupancy was achieved in September 1998 and the government restriction ran until September 2013. (Ptf's Mot for Summ J at 3; *see also* Clarey Decl at ¶ 7.) Defendants disagree, maintaining 50 percent occupancy was achieved as of December 1995 and, therefore, the government restriction on use ended in 2010. (*See* Inv's Cross-Mot at 7–8; Def's Cross-Mot at 4.) Jeff Hanson, Finance Manager for the Authority, who keeps records of Certificates of Continuing Compliance and Quarterly Statistical Reports to determine if properties complied with the low income housing requirements, declared that Certificates of Compliance for the subject property were filed first on December 31, 1995, and last on August 6, 2008. (Hanson Decl at ¶¶ 1, 3–5.) The 1995 Certificate of Compliance stated that 22 out of 608 units were vacant. (*Id.*, Ex 1 at 2.) "Plaintiff stopped filing certificates of compliance with the Housing Authority after the certificate of compliance dated August 6, 2008." (*Id.* at ¶ 6.) Plaintiff redeemed the bonds in 2009. (Fraser Decl, Ex 4; Hanson Decl at ¶ 7.)

Clarey declared that, "[o]n or about December 19, 2013, [he] informed [the County] that the Subject Property was no longer subject to a governmental restriction on use." (Clarey Decl at ¶ 8.) Chris Werner, Appraisal Supervisor for the County, declared that in 2013, his "staff sent emails to plaintiff inquiring about the status of its property as low income housing. [They] reviewed [their] records and are not aware of any email responses to those emails." (Werner Decl at ¶¶ 1, 3; *see also* Nelson Decl at ¶ 10 (declaring that his "office [was] not aware of any email from Plaintiff on December 19, 2013[,] that the subject property was no longer subject to a government restriction on use.").)

C.    *The County's Disqualification Notice*

The County sent a disqualification notice to Plaintiff on January 4, 2017. (Fraser Decl, Ex 5.) The notice stated that the subject property had "been assessed as a low income housing project since 2003; however, upon review, there is no evidence that it was ever approved as a low income housing project." (*Id.* at 1.) As a result, the County disqualified the subject property from special assessment pursuant to OAR 150-308-0730, determined a new MAV, and imposed penalties in the form of back taxes due to Plaintiff's failure to notify the County within 60 days of the disqualifying event. (*See id.*) On February 14, 2017, the County sent a letter to Plaintiff detailing corrections to the tax rolls going back to the 2003-04 tax year pursuant to its discovery of "a disqualifying event" under ORS 308.714. (Fraser Decl, Ex 6.) The February 14 letter cited ORS 311.223 for its authority to add taxes for the prior years indicated. (*See id.*)

II. ANALYSIS

A.    *Parties' Cross-Motions for Summary Judgment*

In its Amended Complaint, Plaintiff made four claims for relief:

(1) The County's notice of disqualification "is defective and void";

(2) The County illegally imposed a penalty assessment under OAR 150-308-0730;

(3) The County's determination of the subject property's 2016-17 RMV and AV, and any resulting penalties, is excessive; and

(4) The County lacked a legal basis to recalculate the subject property's MAV.

(Am Compl at 3–7.)

Plaintiff moves for summary judgment on all claims on the theory that, because the subject property was never subject to low income housing special assessment, the County's disqualification notice and its actions that flowed from that disqualification (imposition of the penalty, calculation of the penalty, and recalculation of the MAV) were all made without legal authority.[2] (*See* Ptf's Mot for Summ J at 1–2, 12–13.)

The Department (1) asserts that Plaintiff's Motion for Summary Judgment should be denied because material facts are in dispute; and (2) asks that the court grant summary judgment in Defendants' favor on Plaintiff's first, second, and fourth claims for relief on the theory that the County properly disqualified the subject property from special assessment. (Inv's Cross-Mot at 9–10.) The County joins the Department's motion and requests denial of Plaintiff's Motion for Summary Judgment based on material facts in dispute. (Def's Cross Mot at 1.)

B.      *Standard for Summary Judgment*

The court will grant a motion for summary judgment

> "if the pleadings, depositions, affidavits, declarations, and admissions on file
> show that there is no genuine issue as to any material fact and that the moving
> party is entitled to prevail as a matter of law. No genuine issue as to a material
> fact exists if, based upon the record before the court viewed in a manner most
> favorable to the adverse party, no objectively reasonable juror could return a

---

[2] Plaintiff presented other theories on which it might prevail on its claims should the court conclude that the County had legal authority to issue the disqualification notice. For instance, with respect to the penalty, Plaintiff maintains that it was wrongfully imposed because Plaintiff timely gave notice to the County that the subject property was no longer subject to a government restriction. (*See* Am Compl at 4–5.)

verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial."

Tax Court Rule (TCR) 47 C.[3] Plaintiff, as the party seeking affirmative relief, bears the burden of proof by a preponderance of the evidence. ORS 305.427.[4]

Except for expert opinions, "affidavits or declarations must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." TCR 47 D. "A party opposing summary judgment cannot rest upon the allegations of his pleadings[, but] must 'disclose the merits of [its] case or defense.' " *Eugene TV v. Flinn,* 43 Or App 837, 841, 604 P2d 437 (1979). Opposing affidavits or declarations that are "based solely on 'information and belief' " rather than "on personal knowledge * * * are incompetent to raise an issue of fact on motion for summary judgment and will be disregarded." *McDonough v. Jones,* 48 Or App 785, 791–92, 617 P2d 948 (1980). Declarations or affidavits consisting of legal conclusions "are not sufficient to defeat a summary judgment motion." *Spectra Novae, Ltd. v. Waker Associates, Inc.,* 140 Or App 54, 59, 914 P2d 693 (1996).

"Even if facts are undisputed, if the inferences arising from them are susceptible to more than one reasonable conclusion, summary judgment should not be granted." *Van Osdol v. Knappton Corporation*, 91 Or App 499, 502, 755 P2d 744 (1988). "Credibility questions are for the fact finder; they are not for the court to resolve in dealing with contradictory evidence in a summary judgment setting." *Taal v. Union Pacific Railroad Co.,* 106 Or App 488, 494, 809 P2d

---

[3] TCR 47 is made applicable through the preface to the rules of the Magistrate Division, which states that "[i]f circumstances arise that are not covered by a Magistrate Division rule, the rules of the Regular Division may be used as a guide to the extent relevant."

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

104 (1991). "The court's role on summary judgment is not to decide whether its credulity has

been strained but to determine whether there is a genuine issue of material fact." *McPhail v.*

*Milwaukie Lumber Co.,* 165 Or App 596, 603, 607–08, 999 P2d 1144 (2000).

C.      *Statutory and Regulatory Framework*

This court has previously given a succinct overview of the history and operation of the

low income housing special assessment program:

> "As evidenced by a series of decisions from this court and the Supreme Court,
> [the Department] and various property owners have engaged in a long-running
> struggle to determine how best to assess low-income housing projects for property
> taxation. * * * Those cases were litigated against a statutory backdrop in which
> * * * (RMV) was determinative of * * * (AV). In 2001, the legislature passed
> House Bill (HB) 2204, which established a new taxation regime for low-income
> housing projects, which would apply at the option of the property owner. Or
> Laws 2001, ch 605. HB 2204 was codified at ORS 308.701 to 308.724.

> "The new regime offers owners of low-income housing projects (defined as
> 'multiunit rental housing that is subject to a government restriction on use') the
> choice of either having their property assessed 'under the ordinary methods of
> assessing property in this state' or having it assessed under ORS 308.707. ORS
> 308.704. ORS 308.707(4) provides that low-income housing projects shall be
> assessed at the lowest of the property's [RMV], specially assessed value (SAV),
> or maximum assessed value (MSAV). MSAV is a function of the SAV. ORS
> 308.707(3). The SAV of a property is to be determined according to one of three
> methods described in ORS 308.712, chosen by the property owner. In all cases,
> the RMV of a property, determined under the general principles of ORS 308.205,
> if lower than the SAV or MSAV of the property, will be the basis for
> assessment. ORS 308.707(4)."

*Dept. of Rev. v. Butte Creek Associates I*, 19 OTR 1, 2–3 (2006). As emphasized by Plaintiff, the

decision whether to specially assess a low income housing project or to assess it "under the

ordinary methods of assessing property in this state," *i.e.,* RMV as defined in ORS 308.205, is

"at the discretion of the owner." (*See* Ptf's Mot for Summ J at 5–6, citing ORS 308.704.)

To receive low income housing special assessment, the property owner must have "filed

an application for special assessment under ORS 308.709 and that application [must have] been

approved." ORS 308.707(1). In order to seek special assessment, an owner must file a written application in the form and containing the information prescribed by the Department of Revenue. ORS 308.709(4). The owner must simultaneously submit a completed election form described in ORS 308.712 along with an income and expense statement, if available. ORS 308.709(5). The county assessor must notify the applicant in writing of its determination on the special assessment application. ORS 308.709(7).

An owner of specially assessed property must notify the county assessor in writing if the property is no longer subject to a government restriction on use, and the notification must be given within 60 days of the disqualifying circumstance. ORS 308.714(1)–(3). The Department of Revenue may prescribe rules for the penalties to be imposed if the property owner fails to give notice. ORS 308.714(4). The Department of Revenue has promulgated a rule entitled "Special Assessment Disqualification Process," which states that "[t]he assessor must disqualify property from special assessment as government restricted multiunit rental housing if * * * [t]he property is no longer multiunit rental housing subject to a government restriction on use * * *." OAR 150-308-0730(1). Subsection (5)(a) of that rule states:

> "(5) The following penalties apply if the property owner fails to notify the assessor within 60 days of the disqualifying event:
>
> "(a) If the property is disqualified because the multiunit rental housing is no longer subject to a government restriction on use, the penalty is the difference between the taxes imposed and those that would have been imposed had the property not been specially assessed, plus any applicable interest."

D.    *Analysis*

The crux of Plaintiff's Motion for Summary Judgment is that the subject property was never *qualified* for low income housing special assessment and, therefore, could never be *disqualified* from special assessment. (*See* Ptf's Mot for Summ J at 4.) In support of its position,

Plaintiff noted that the County's disqualification notice admitted that the County had "no evidence that [the subject property] was ever approved as a low income housing project." (*Id.* at 6–7.) Additionally, Plaintiff provided a declaration from its manager, Clarey, stating that Plaintiff never applied for special assessment and no documents pertaining to special assessment were produced during the extensive due diligence conducted prior to Plaintiff's purchase of the subject property.

Defendants dispute Plaintiff's contention that the subject property was never subject to special assessment, citing the notation on the property tax statements since at least 2009, "LOW INCOME HOUSING POTENTIAL [ADDITIONAL] TAX LIABILITY[.]" (Def's Cross-Mot at 3; *see* Ex 1 to Ellis Decl.) Additionally, Defendants provided a declaration from the County's Appraisal Division Manager, Nelson, stating that the subject property *was* subject to special assessment, a SAV was calculated in 2003, and the MAV was reduced. (*Id.* at 5.) Defendants maintain that, even if the subject property was erroneously granted special assessment in 2003, the County's disqualification notice is still valid because the County had "a statutory duty under ORS 308.714(5)(a) to disqualify" the subject property upon learning it was no longer subject to a government restriction. (*See* Inv's Cross-Mot at 4, 5–6.)

1.      *Whether disqualification is proper where special assessment granted in error*

The court must initially address a legal question: whether a property could be subject to low income housing special assessment – including the disqualification process – even if none of the "preconditions" for qualification were satisfied. (*See* Ptf's Reply at 4.) The "preconditions" refer to the application and approval requirements set forth in ORS 308.709.

To resolve that question, the court starts with the text, context, and legislative history of the relevant statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143

(1993); *State v. Gaines*, 346 Or 160, 171–72, 206 P3d 1042 (2009). As described above, ORS 308.704 clearly states that a property owner may choose whether to participate in the low income housing special assessment program. Additionally, ORS 308.707(1) sets forth two requirements for special assessment, one of which is that the property owner "has filed an application for special assessment under ORS 308.709 and that application has been approved." ORS 308.707(1)(b). The statutory text supports Plaintiff's position that a property may only be subject to special assessment following submission of the owner's application.

Notwithstanding the statutory text, Defendants argue that support for their position is found in case law. (*See* Inv's Cross-Mot at 4–6.) Upon review, the court concludes the cases cited do not support Defendants' position. In *Teich v. Clackamas County Assessor (Teich)*, TC-MD 990478C, 1999 WL 1568590 at *1 (Nov 4, 1999), the taxpayers initially obtained forestland special assessment through an application in 1993. The assessor subsequently discovered that it had granted the application in error and notified the taxpayers that it "had placed the property in forestland deferral through an oversight" and would "remov[e] the deferral status beginning with the upcoming tax year (1999-2000)." *Id.* The assessor did not apply the five-year penalty because the original approval of the application was in error. *Id.* In *Miller v. Jackson County Assessor (Miller)*, TC-MD 111063C, 2012 WL 5766577 at *1 (Nov 16, 2012), the property at issue had been granted exclusive farm use special assessment due to the assessor's "human error." The assessor initially sought to disqualify the property from special assessment, which included "a 10 year rollback tax[,]" but instead corrected the error under ORS 311.205 and "imposed a four year 'rollback tax,' covering the years of [the taxpayer's] ownership." *Id.* The court concluded that the assessor had authority to correct the classification

/ / /

of the property as a clerical error because the assessor's "records contain[ed] all the pertinent data." *Id.* at \*3.

*Teich* is distinguishable from this case because the taxpayers submitted an application for special assessment that was granted, albeit erroneously, by the assessor. In removing the special assessment, the assessor did not impose the five-year penalty that would ordinarily result from a disqualification. Thus, the court did not reach the question of whether the assessor could have imposed the penalty. In *Miller*, the assessor did not use the disqualification process and, instead, relied upon its error correction authority under ORS 311.205. Those cases are not instructive on the issue presented here and, if anything, suggest that the County could have corrected the tax roll under ORS 311.205 upon its discovery that it had erroneously granted special assessment.[5] Based on the legislature's expressed intent that property owners elect whether to receive special assessment and on the availability of other means by which an assessor may correct errors on the tax roll, the court concludes that disqualification from special assessment is not supported where the property owner did not, at a minimum, apply for low income housing special assessment.[6]

2.       *Whether a prior owner of the subject property submitted an application*

Having concluded that a property may only be disqualified from low income housing special assessment if the owner elected to participate in the program by submitting an

///

///

___

[5] Although Defendants do not admit that the County erroneously granted special assessment in this case, the County's disqualification notice suggests that may be so based on the statement that the County found "no evidence that [the subject property] was ever approved as a low income housing project."

[6] The ruling here is limited to situations in which the property owner never applied for special assessment. The court does not reach the question of whether an assessor may disqualify a property from special assessment where the property owner submitted an application but, for instance, never received a written response. The court also does not reach the question of whether the County's use of its error correction authority under ORS 311.205 would have been proper in this case because those facts are not before the court.

application, the court turns to the factual question of whether a prior owner of the subject property submitted an application for low income housing special assessment.[7]

Plaintiff provided a declaration of Clarey, the subject property's manager, describing the due diligence performed by Plaintiff before it purchased the subject property. Specifically, Plaintiff retained special legal counsel to perform due diligence and Plaintiff's counsel requested that the seller provide "any and all copies of any documents related to the property that were recorded or otherwise filed with any government agency." The fact that Plaintiff received no documents related to an application for special assessment supports an inference that no such documents exist. However, Clarey did not identify any facts showing that he has personal knowledge of whether any prior owners did or did not submit an application; presumably, only an agent of the original or prior owners has such personal knowledge. In response, Defendants filed a declaration from the County's Appraisal Division Manager, Nelson, stating that the subject property was subject to special assessment beginning in 2003; that the subject property's MAV and AV were determined under ORS 308.707; and that a SAV was determined in 2003. It is unclear upon what facts Nelson based his conclusory statements; did he personally approve the application and perform the calculations, or did he subsequently review records to that effect?

The undisputed facts presented create only inferences as to whether a prior owner of the subject property submitted an application for low income housing special assessment. A fact finder could reasonably conclude either that an application was submitted in 2003 but ultimately lost over time, or that the County erroneously placed the subject property in special assessment absent an application. The ultimate determination may turn on the credibility of the parties'

_____

[7] The court accepts that Plaintiff did not submit an application for special assessment based on Clarey's declaration and based on Defendants' contention that the special assessment began in 2003 before Plaintiff owned the subject property. If any application was submitted, it would have been by the original or the prior owners.

witnesses and the sources of their knowledge. If the court is eventually convinced that no application for special assessment was ever submitted, then the court would invalidate the County's disqualification notice and grant Plaintiff's appeal. If the court is convinced that an application was filed, but subsequently lost, then the County's disqualification may have been proper and the court will proceed to consideration of Plaintiff's remaining claims.

3. *Disposition of additional issues briefed on summary judgment*

With respect to the other issues briefed – when the subject property first qualified as low income housing (1995 vs. 1998) and when it ceased to be subject to government restriction (2010 vs. 2013); whether Plaintiff gave notice to the County in 2013; and whether penalties were properly calculated and imposed – they will be decided after resolution of the threshold question, whether the subject property ever qualified for low income housing special assessment.

III. CONCLUSION

Upon careful consideration, the court concludes that a property owner must have submitted an application for low income housing special assessment under ORS 308.709 in order for an assessor to disqualify the property from low income housing special assessment. A genuine issue of material fact exists as to whether an application for the subject property was ever submitted to the County. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that Defendant-Intervenor's Cross-Motion for Partial Summary Judgment is denied.

IT IS FURTHER ORDERED that Defendant Washington County Assessor's Cross-Motion for Partial Summary Judgment is denied.

/ / /

IT IS FURTHER ORDERED that, within 30 days from the date of this Order, the parties will file a joint written status report proposing next steps, including three mutually agreeable trial dates if trial is requested.

Dated this ＿＿ day of January 2018.

ALLISON R. BOOMER
MAGISTRATE

***This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.***

***This document was signed by Magistrate Allison R. Boomer and entered on January 24, 2018.***