141 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lana MOCKLER, Plaintiff-Appellee,
v.
MULTNOMAH COUNTY; Dan Noelle; Dennis Fitz, Defendants-Appellants,
and
Pieter Van Dyke; Multnomah County Deputy Sheriff's
Association; Robert Skipper, Defendants.
 No. 96-35895, 96-36122.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted January 5, 1998.
Decided March 31, 1998.
 
 Appeal from the United States District Court for the District of Oregon, Helen J. Frye, District Judge, Presiding.
 MEMORANDUM*
 Before PREGERSON, TROTT, and TASHIMA, Circuit Judges.
 
 
 1
 Because the parties are familiar with the factual and procedural history of this case, we will not recount it here except as necessary to clarify our decision.
 
 
 2
 We review the denial of a motion for judgment as a matter of law de novo. Acosta v. City and County of San Francisco, 83 F.3d 1143, 1145 (9th Cir.1996). "Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." Id. The jury's verdict is reviewed to determine whether it is supported by substantial evidence. Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Id. (citation omitted).
 
 
 3
 I. The District Court Properly Denied Defendants' Motion for Judgment as a Matter of Law on the Equal Protection Claim
 
 
 4
 Defendants allege that they are entitled to judgment as a matter of law on Mockler's § 1983 claim because (1) Mockler failed to show that Fitz's conduct was the result of a "custom or practice" of the Sheriff's Office; (2) Sheriff Dan Noelle was not a proper party to the § 1983 claim, and (3) Deputy Fitz's conduct did not meet the standard required for an imposition of punitive damages.
 
 A. Custom or Practice
 
 5
 Mockler presented substantial evidence to show a custom and practice of sexual harassment and retaliation in the Sheriff's Office. See Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir.1992) (plaintiff may show custom by proving "the existence of a widespread practice that ... is so permanent and well settled as to constitute a 'custom or usage' with the force of law.") (citation omitted). Several high-ranking female officers that worked in the Sheriff's Office both before and after Sheriff Skipper became Sheriff in 1989 testified that the work environment in the Sheriff's office was punctuated with sexual jokes, sexually discriminatory comments, inappropriate touching, and derogatory comments. They also testified to sexual discrimination in training, assignments, and promotion under Sheriff Skipper's tenure. While such discrimination was common, female officers stated that they would not file a complaint due to the fear of retaliation. Skipper testified that he "knew we had problems with sexual harassment" in 1990. But the only action that he took in relation to sexual harassment between 1990 and 1992 was to pass out some training materials to his supervisors. In the instant action, the Sheriff knew that Fitz continued to interfere with Mockler's activities, yet he chose not to discipline him. An employer's failure to discharge or reprimand employees for repeated violations of federal law is evidence of custom. See Larez v. City of Los Angeles, 946 F.2d 630, 647 (9th Cir.1991) (jury may find custom of excessive force where police chief failed to reprimand officers for use of excessive force).
 
 
 6
 Viewing the evidence in the light most favorable to Mockler, defendants failed to show that a reasonable jury could only conclude that there was no custom or practice of sexual harassment in the Sheriff's Office.
 
 B. Dan Noelle Was a Proper Party
 
 7
 After Sheriff Skipper retired, Mockler properly substituted newly elected Sheriff Dan Noelle as a party defendant under FRCP 25, which provides that: "When a public officer is a party to an action in an official capacity and during its pendency dies, resigns or otherwise ceases to hold office, the action does not abate and the party's successor is automatically substituted as a party...." Moreover, Oregon law permits "[a]n action [to] be maintained by or against any public officer in this state in an official character, when ... the officer does not represent any of the public corporations mentioned in ORS 30.310, for any of the causes of action specified in such section and ORS 30.320."[1] ORS § 30.400. This section further provides that a judgment entered against an officer under this section "may be enforced against the officer personally, and the amount thereof shall be allowed to the officer in the official accounts of the officer." ORS § 30.400.
 
 C. Punitive Damages
 
 8
 Deputy Fitz's conduct met the standard required for an imposition of punitive damages. Punitive damages are available under § 1983 when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Deputy Fitz repeatedly (1) monitored Mockler, (2) filed complaints against her, (3) encouraged her supervisors to discipline her, (4) spread rumors about her, (4) attempted to interfere with her appointment as a Coach, and (5) stared and glared at her in the workplace after he was directly ordered to leave her alone. This evidence supports a jury finding that Deputy Fitz harassed Mockler in reckless and callous disregard of her federally protected right to be free from harassment and retaliation in her workplace.
 
 
 9
 II. The District Court Properly Denied Defendants' Motion for Judgment as a Matter of Law on Plaintiff's Claim of Intentional Infliction of Emotional Distress
 
 
 10
 To prove a claim of intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to inflict emotional distress, (2) the defendant's conduct did, in fact, cause plaintiff to suffer severe emotional distress, and (3) the defendant's conduct involved an extraordinary transgression of the bounds of socially tolerable behavior. McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841, 849 (1995).[2]
 
 
 11
 First, there was evidence that Deputy Fitz intended to cause Mockler emotional distress. He engaged in a continuous effort to harass and demean Mockler by calling her derogatory names, spreading rumors, encouraging her supervisors to discipline her, filing complaints against her, glaring at her, and attempting to interfere with her appointment as a Coach. See Franklin v. Portland Community College, 100 Or.App. 465, 787 P.2d 489, 492 (1990) (jury may infer the specific intent to cause emotional distress when the defendant engages in a continuing pattern of discrimination and retaliation with an intent to demean the plaintiff); Palmer v. Bi-Mart Company, Inc., 92 Or.App. 470, 758 P.2d 888, 889-90 (1988) (supervisor engaged in course of harassment verbally and through notes with sexually explicit wording). She also showed that she suffered severe emotional distress as a result of his conduct, as she was in therapy, on medication, sought administrative leave for stress, and eventually transferred out of the Sheriff's Office. See Franklin, 787 P.2d at 493 n. 4 (plaintiff suffered severe stress where stress that lasted for two years caused him to take substantial time off of work).
 
 
 12
 Moreover, Mockler showed that Fitz's conduct involved an extraordinary transgression of the bounds of socially tolerable behavior. Language used to sexually harass may be deemed socially intolerable. Whelan v. Albertson's, Inc., 129 Or.App. 501, 879 P.2d 888, 891 (1994) (citing Lathrope-Olson v. Oregon Department of Transportation, 128 Or.App. 405, 876 P.2d 345, 346 (1994) (plaintiff told that "all women were good for was between their legs")). "If the content of statements alone is not dispositive, we also consider the context and repetition of the insults, in determining whether the statements were socially intolerable." Whelan, 879 P.2d at 891 (calling plaintiff "queer" or imitating his alleged feminine characteristics is not actionable in isolation, these acts may be seen as socially intolerable when repeated in front of customers and co-workers).
 
 
 13
 Deputy Fitz used derogatory language of a sexual nature against Mockler in front of her co-workers, and spread rumors about her sex life throughout the Sheriff's office. He engaged in a continuous pattern of discrimination and retaliation against her. Fitz's conduct was exacerbated by the fact that he was assisted by other officers that spread rumors, gave Mockler the silent treatment, and failed to provide her with assistance in work-related matters.[3] See Mauri v. Smith, 135 Or.App. 662, 901 P.2d 247, 255 (1994), rev'd on other grounds, 324 Or. 476, 929 P.2d 307 (1996) (policeman's conduct, combined with his failure to prevent another party's improper conduct, constituted socially intolerable behavior). Fitz's conduct caused more than a "temporary annoyance or injured feelings," and it consisted of more than "insults, harsh or intimidating words, or rude behavior." Hall v. May Department Stores Co., 292 Or. 131, 637 P.2d 126, 129 (1982), abrogated by McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841 (1995). The jury had substantial evidence upon which to base its conclusion that Deputy Fitz's conduct exceeded the bounds of socially tolerable behavior.[4]
 
 
 14
 Finally, Mockler was entitled to the award of punitive damages for her intentional infliction of emotional distress claim. The Oregon Supreme Court has held that:
 
 
 15
 it seems clear ... that in a jurisdiction which generally allows punitive damages for grave intentional torts, punitive damages in principle are allowable when an "extraordinary" or "extreme" transgression of social norms is an indispensable element of the tort itself. When the jury is correctly instructed on that element of liability as well as on compensatory and punitive damages, and there is evidence to support its verdict as to liability, this tort leaves little room to scrutinize the facts for an additional degree of aggravation to support punitive damages. Hall, 637 P.2d at 134-35 (1982).
 
 
 16
 Defendants do not claim that the jury was improperly instructed on a claim for intentional infliction of emotional distress or on compensatory and punitive damages. Thus, defendants fail to show that Mockler's claim does not meet the threshold requirements for an award of punitive damages.[5]
 
 III. Multiple Recovery
 
 17
 The jury awarded damages in the following amounts:
$150,473.92 in general damages ($150,000) and in back pay ($473.92) against
 Multnomah County for sexual harassment and retaliation;
$ 45,000.00 for denial of equal protection, including ($25,000) in general
 damages against Fitz and the Multnomah County Sheriff and
 ($20,000) in punitive damages against Fitz; and
$ 30,000.00 in general damages ($10,000) and punitive damages ($20,000)
 against Fitz for intentional infliction of emotional distress.
 
 
 18
 Defendants argue that the jury's award of (1) $25,000 in compensatory damages for the equal protection claim, and (2) $10,000 in general damages for Mockler's intentional infliction of emotional distress claim were duplicative of the award provided for Mockler's sexual harassment and retaliation claims because all claims were based on the same conduct. A duplication of recovery occurs when a plaintiff is compensated for a single injury under several different legal theories. Diversified Graphics Ltd. v. Groves, 868 F.2d 293, 295 (8th Cir.1989) (plaintiff not entitled to recovery under both negligence and breach of fiduciary duty claim arising from single injury).
 
 
 19
 In Gentile v. County of Suffolk, 926 F.2d 142, 153-54 (2d Cir .1991), the defendants raised a similar challenge, claiming that plaintiffs received a double recovery because they were awarded $75,000 on their state cause of action and $75,000 on their federal § 1983 action, both of which arose from the same conduct. The court reasoned that while the award may suggest a duplicate recovery:
 
 
 20
 it is equally conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law, and merely split the total amount equally between the state and federal causes of action in announcing their award to the court on the form submitted to it. Id. at 154.
 
 
 21
 Similarly, Mockler's jury may have concluded that she suffered a total of $225,000 of unduplicated injuries and split this total amount among the various causes of action as provided on the verdict form submitted by the court. The defendants fail to show that the jury did otherwise. See id. ("It is, of course, possible that the jury committed the error of duplicating damages here, but defendants have failed to establish this allegation with any degree of certainty.")
 
 
 22
 "The policy of deferring to a jury verdict is a powerful one, even in cases in which the jury has taken action that is at first blush difficult to explain." Id. at 154. Several factors counsel against setting aside the jury's verdict in this case. First, the defendants suggested the verdict form used by the court. This form had separate interrogatories that required the jury to determine the amount of damages to award for each cause of action. Second, during the instruction conference, the defendants did not challenge the verdict form or suggest an instruction that would warn against duplicative recovery. Third, the court properly instructed the jury that Mockler must "prove each item of damage by a preponderance of the evidence," and informed them that "the law does require that the compensation allowed be reasonable."[6] For these reasons, we decline to set aside any portion of the jury's award of damages.[7]
 
 
 23
 Defendants also allege that the jury award of punitive damages for both the equal protection claim and the intentional infliction of emotional distress claim was duplicative. These awards were not duplicative because they may be interpreted to represent the jury's intent to punish Deputy Fitz for his disregard of both federal law (prohibiting sexual harassment and retaliation) and state policy (against intentionally causing emotional distress) in his continued harassment of Mockler. See Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1460 (10th Cir.1997) (award of punitive damages for both a § 1983 claim and a wrongful discharge claim was "may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter all the improper conduct underlying the verdict [including the violation of federal law and state public policy].")
 
 VII. Attorney's Fees
 
 24
 Plaintiff is entitled to attorney's fees resulting from the instant appeal pursuant to 42 USC § 2000e-5(k), 42 USC § 1988(b), and ORS 659.121(1) and shall file her application therefor in accordance with Ninth Cir.R. 39-1.6. Any timely application is hereby referred to the Appellate Commissioner for his determination as to amount, pursuant to Ninth Cir.R. 39-1.9.
 
 
 25
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Mockler has not raised any of the causes of action mentioned in ORS 30.310 or 30.320
 
 
 [2]
 A plaintiff's verdict cannot be set aside by a motion for judgment as a matter of law unless there is "no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action. [The court] do[es] not weigh[ ] the evidence; [it] consider[s] the evidence, including inferences, in the light most favorable to plaintiff." Brown v. J .C. Penney Company, Inc., 297 Or. 695, 688 P.2d 811, 817 (1984) (citation omitted)
 
 
 [3]
 In one incident, Mockler was stabbed with a dirty needle during an arrest that had the potential of exposing her to the AIDS virus. Mockler presented evidence that suggested that Deputy Van Dyke dragged his feet in obtaining a search warrant that would enable her to test the suspect's blood for the virus
 
 
 [4]
 Deputy Fitz is personally liable for the intentional infliction of emotional distress because his conduct was motivated by his desire to retaliate against Mockler rather than his desire to serve his employer. Schram v. Albertson's, Inc., 146 Or.App. 415, 934 P.2d 483, 492 (1997); Boers v. Payline Systems, Inc., 141 Or.App. 238, 918 P.2d 432, 435-36 (1996). Moreover, Deputy Fitz was not hired to supervise Deputy Mockler's work--in fact he was ordered not to
 
 
 [5]
 Defendants also allege that the district court erred in admitting various items of evidence. Evidentiary rulings are reviewed for abuse of discretion. Reversal is proper only upon a showing of prejudice. Sloman v. Tadlock, 21 F.3d 1462, 1472 (9th Cir.1994). Defendants failed to show that the district court abused its discretion in admitting the challenged items of evidence
 
 
 [6]
 In Gentile, the court similarly noted that "the question of duplicative damages was not raised by defendants in their requests to charge or in their objections to the court's instructions on the issue of damages, and the court correctly instructed the jury to award only those damages that would reasonably compensate plaintiffs for whatever damages were proximately caused by defendants' unlawful actions." Id
 
 
 [7]
 Moreover, Mockler did not merely suffer one injury. The record reveals that she suffered multiple injuries as a result of the conduct of the County, Deputy Fitz, the Sheriff and other Multnomah County officers